THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE ALLAN SAYLES, Defendant-Appellant.

Fourth District   No. 4—84—0370

Opinion filed February 7, 1985.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Michael Blazicek, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

The defendant was charged by indictment in Champaign County with the offenses of burglary and theft in violation of sections 19—1 and 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 19—1 and 16—1). Following a jury trial, he was convicted of burglary and was sentenced to seven years' imprisonment. The conviction and sentence occurred *in absentia*. Defendant appeals from his conviction. The State has moved to dismiss this appeal because the defendant remains a fugitive at this time. We have taken this motion with the case. We now deny the motion to dismiss the appeal and affirm the judgment of the trial court.

On December 1, 1983, defendant was charged by indictment with the offenses of burglary and theft. The theft charge was later dismissed upon the motion of the State. Defendant had been released from custody after posting a $250 cash bond. He subsequently appeared at the December 6, 1983, arraignment and pleaded not guilty. At that time he was admonished that if he failed to appear at trial when required, such failure would constitute a waiver of his right to confront the witnesses against him and that the trial could proceed in his absence. The record reflects that defendant was represented by a Champaign County assistant public defender. The record also reflects that the arraignment hearing was the defendant's last court appearance. He did not appear for his February 14, 1984, trial and, at the time of this appeal, he remains at large.

On January 27, 1984, the cause was set for trial. Defense counsel appeared without the defendant on February 14, 1984, the scheduled trial date. Upon the defendant's failure to appear, the State moved for a bench warrant to issue for defendant's arrest. This motion was granted by the trial court, and the warrant was issued. The State also requested a trial *in absentia*.

On February 24, 1984, a hearing was held on the State's motion to try defendant *in absentia.* The motion was granted, and a jury trial was scheduled for April 18, 1984.

On April 18, 1984, prior to the commencement of the trial, defense counsel moved for a continuance stating that she had never met or spoken with the defendant. (Another assistant public defender had originally represented the defendant, and he had subsequently terminated his employment with the public defender's office.) The motion was denied.

Also prior to trial, in a ruling *in limine,* the court held that evidence concerning another burglary allegedly committed by the defendant would be admissible. Defendant had been charged by information with this alleged incident; however, the charge was subsequently dismissed by the trial court since defendant had never been arraigned on it.

The testimony at trial indicated that a burglary occurred at the Illini Towers student housing facility in Champaign on November 24, 1983, which was Thanksgiving Day. John Betterman, a resident assistant at Illini Towers, testified that he was doing maintenance work in the building on November 24, 1983. At approximately 1 p.m., he noticed a man in an elevator carrying a television, a portable stereo, and a canvas bag. The man appeared "flustered" because he could not properly operate the elevator. Betterman identified a picture of the defendant as the same man who was in the elevator. Betterman testified that he subsequently reported the incident to his supervisor, Tina Frighetto. Betterman then accosted the man outside of the building as he was mounting a bicycle, still holding the stereo and canvas bag but without the television. Betterman asked the man why he was in the building, and the man responded that he was visiting "Nancy Carter." He then left on his bicycle, traveling east. Betterman returned to the building and asked Frighetto if a "Nancy Carter" lived in the housing facility. She responded that no such person lived there. Betterman then left to pursue the suspect on foot while Frighetto telephoned the police. Betterman was subsequently picked up by an Urbana police officer who had responded to Frighetto's call. From the squad car, Betterman identified the defendant as he rode his bicycle, and the defendant was arrested soon after.

Betterman later returned to Illini Towers with Detective Gary Wright of the Champaign police department. Together they located a television in a garbage dumpster near where Betterman had seen the defendant mounting his bicycle. Betterman and Frighetto later checked all of the rooms in the 16-story building and discovered that a

room on the 13th floor had a door with a broken lock. The door had apparently been forced open.

Frighetto testified that she was the resident director at Illini Towers. She stated that special security procedures were taken over the Thanksgiving vacation. Of the 600 residents, only 15 to 20 remained at Illini Towers on Thanksgiving Day. All entrances to the building were locked. Persons without a key were required to "buzz" the front desk and then show an Illini Towers' identification card or be escorted by a resident of the building. Frighetto also stated that a few University of Illinois employees worked in second and third floor offices in Illini Towers. A few were working on Thanksgiving Day. Frighetto also acknowledged that entry to the building could be obtained by waiting outside the stairwell doors until someone exited there and then catching the door before it closed and automatically locked. Frighetto also corroborated Betterman's testimony as to the occurrences on November 24, 1983.

Officer William Blackmon of the Urbana police department testified that he responded to a radio dispatch on November 24, 1983, that indicated a theft had just occurred at Illini Towers and that the suspect was traveling east (toward Urbana) on a bicycle. He drove to the area and spotted a bicyclist fitting the suspect's description, carrying a canvas bag and a portable stereo. He then observed Betterman chasing the suspect. Blackmon asked Betterman to get into his squad car, and they soon apprehended the defendant. Blackmon identified the defendant from a photograph shown to him at trial.

Detective Gary Wright of the Champaign police department testified that he took custody of the defendant at the scene of his apprehension by the Urbana police. At the time, defendant had a large portable stereo in his possession. He also had a canvas bag which contained some cassette tapes, a light bulb, a poster, two screwdrivers, two bottles of cologne, a telephone, and two packages of frozen meat. Wright testified that the meat was frozen solid at the time defendant was apprehended. Wright later returned to Illini Towers and discovered a television in an outside dumpster. Wright testified that defendant stated, "I don't know why I do these things" in response to Wright's request for his name. Wright identified a photograph at trial as a picture of the defendant.

Gayle Goldsmith testified that she lived in room 1305 at Illini Towers. During Thanksgiving vacation she and her roommate, Elise Buckely, left their room locked. When she returned she noticed that the door to their room had been forced open and that her television, portable stereo, and several cassettes were missing. She later identi-

fied these items, at the police station, as the television that Wright had found in the dumpster and as the stereo and cassettes found in the defendant's possession. Goldsmith stated that she had given no one permission to enter her room. Elise Buckely corroborated and reiterated Goldsmith's testimony.

Over defense counsel's objection, David Willoughby testified that he lived in the Illini Manor apartment building, next door to Illini Towers. He stated that he left his apartment on Tuesday, November 22, 1983, and returned on Monday, November 28, 1983. Upon his return he noticed that his television and stereo had been placed on his kitchen counter. Other of his possessions were scattered around his apartment. He identified the State's exhibits Nos. 5 through 9, 12, and 13 as being, respectively, his telephone, his two bottles of cologne, his light bulb, his poster, and his two packages of frozen meat. All of these items were in his apartment when he left and were missing when he returned. He had given permission only to James Nogle to enter his apartment during his absence.

James Nogle testified that he was the manager of the six-story Illini Manor student apartment building. He entered David Willoughby's apartment to perform maintenance work on Wednesday, November 23, 1983, and observed nothing out of the ordinary. He returned on Monday morning, November 28, 1983, and noticed the television and stereo on the kitchen counter. The rest of the apartment was "very messy." Nogle also noticed that a bedroom window screen had been ripped from top to bottom. Upon Willoughby's return, Nogle suggested that he call the police.

During the closing argument of the prosecution, defense counsel objected to the assistant State's Attorney's remarks about the failure of defense counsel to call Nancy Carter to testify. The objection was overruled by the trial court.

A sentencing hearing was held, *in absentia*, on May 21, 1984. Defendant was sentenced to seven years' imprisonment. On May 25, 1984, defense counsel filed timely notice of appeal on defendant's behalf.

Before reaching the issues of trial error alleged by the defendant, we shall deal with the State's assertion that this appeal should be dismissed.

■ The State first contends that a case may not be appealed until a final judgment has been rendered and that a conviction and sentence *in absentia* do not constitute a truly final judgment. Pursuant to section 115—4.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—4.1), a defendant convicted *in ab-*

*sentia* may be entitled to a new trial, upon application to the trial court, if he can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. The State concludes that this statutory provision makes the conviction and sentence of a defendant tried *in absentia* nonappealable until the defendant has returned and a ruling is made on any claim under section 115—4.1. The State urges this court to follow the decision of the Appellate Court for the Second District in *People v. Brown* (1984), 121 Ill. App. 3d 776, 459 N.E.2d 1175, in this regard.

In *Brown* the court held that, in light of section 115—4.1, a judgment of conviction of a defendant *in absentia* is not a final and appealable order. The court emphasized the fact that the statute provides that a defendant convicted *in absentia* "must" be granted a new trial if he appears before the court and establishes at a hearing that his failure to appear was due to circumstances beyond his control and was not his fault.

Two other districts of the appellate court have reached a different conclusion in construing the effect of section 115—4.1 with regard to the appealability of a conviction or sentencing *in absentia.*

In *People v. Stark* (1984), 121 Ill. App. 3d 787, 460 N.E.2d 47, the Appellate Court for the Fifth District held that a conviction and sentencing *in absentia* was an appealable judgment. The court stated that section 115—4.1 "merely provides defendant with an additional means of securing a new trial," and was not meant to "preempt" a defendant's right to appeal an otherwise final judgment. (121 Ill. App. 3d 787, 790, 460 N.E.2d 47, 49.) The court stated that parallel proceedings may occur when a defendant directly appeals the merits of his conviction and also files a section 115—4.1 motion. The court noted that there is nothing in the statute stating that such a motion is a condition precedent to an appeal and, indeed, a defendant may never choose to file such a motion.

As a practical matter, the court in *Stark* also held that it was proper for defense counsel, in a defendant's absence, to file notice of appeal without consulting the defendant. "Just as defendant's prior approval is not required before counsel validly exercises professional judgment in matters of trial tactics, so too is such prior approval unnecessary when counsel exercises professional judgment and files a notice of appeal." 121 Ill. App. 3d 787, 789, 460 N.E.2d 47, 48.

In *People v. Muir* (1983), 113 Ill. App. 3d 1096, 448 N.E.2d 233, the Appellate Court for the Third District also held that section 115—4.1 did not render an otherwise final *in absentia* judgment nonappealable. The court noted that the State could cite no authority that

would indicate that the statutory right to request a new trial or sentencing hearing by a defendant convicted or sentenced *in absentia* affects the finality of his judgment of conviction. The court stated that since the defendant had never requested relief under section 115—4.1, the fact that he had elected to pursue his right of appeal directly served to waive any rights he had under the statutory procedure.

We agree with the holdings in *Stark* and *Muir* that section 115—4.1 does not render an otherwise final conviction and sentence *in absentia* nonappealable. In our opinion a proceeding under section 115—4.1 after an appeal has been prosecuted *in absentia* is another species of post-conviction relief.

Since it is unnecessary to our disposition of this case, we offer no opinion on the matters of waiver of the statutory right suggested by the *Muir* court, nor of the possibility of parallel proceedings suggested by the *Stark* court. We note that in *Stark* the defendant had been apprehended and was actively participating in the appeal; defendant's activity is less clear from the opinion in *Muir*, but the fair inference is that he was actively participating.

■ In the present case, we believe that the defendant waived his right to proceed under section 115—4.1 when defense counsel chose to file a notice of appeal from his conviction. Defense counsel acted as a representative of the defendant in electing to file the notice of appeal, and this election is binding upon the defendant even where, as here, he was not consulted about the decision. *People v. Stark* (1984), 121 Ill. App. 3d 787, 460 N.E.2d 47.

■ In an alternative argument for the dismissal of this appeal, the State argues that where a defendant is currently a fugitive from the custody of the law of Illinois, the better practice is to dismiss the appeal. The State relies on *People v. Estep* (1952), 413 Ill. 437, 109 N.E.2d 762, for this proposition. The parties agree that a fugitive defendant has no constitutional right to an appeal. (*Molinaro v. New Jersey* (1970), 396 U.S. 365, 24 L. Ed. 2d 586, 90 S. Ct. 498; *People v. Estep* (1952), 413 Ill. 437, 109 N.E.2d 762.) However, the supreme court in *Estep* stated that it is within the discretion of the reviewing court to hear the appeal under these circumstances. Under the circumstances of this case and in light of the enactment of section 115—4.1 after the *Estep* opinion, we choose to decide this appeal on its merits and deny the State's motion to dismiss it.

Defendant first claims that the trial court improperly denied his motion for a continuance made on the date of his trial. Defendant agrees that a motion for a continuance is addressed to the trial court's discretion; however, he argues that that discretion is abused

when the court denies a continuance where defense counsel is unprepared, with just cause, and where the additional time would allow counsel to prepare.

It is clear that this case was originally scheduled for trial on February 14, 1984. At that time defendant was represented by Assistant Public Defender James Padish. When defendant failed to appear for trial, a trial *in absentia* was scheduled for April 18, 1984. At some point before the April trial, James Padish left his position with the public defender's office and he was replaced as counsel in this case by Assistant Public Defender Diana Lenik. On April 18, 1984, she argued that a continuance should be granted since she had never met or spoken with the defendant.

■ It is well settled that a continuance for the purpose of allowing counsel further time to prepare is not erroneously denied unless it serves to prejudice the defendant in some way. (*People v. Wilson* (1963), 29 Ill. 2d 82, 193 N.E.2d 449; *People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521.) Here, the denial of a continuance for the purpose of allowing defense counsel to meet with defendant could not have prejudiced defendant in the presentation of his case. Defendant was a fugitive from justice and could not be found despite a concerted effort by Champaign County law enforcement officials. There were simply no facts that would indicate that defendant would be located or be able to speak with defense counsel in the near future. The presentation of defendant's case was prejudiced by his failure to appear and not by the trial court's decision to deny the continuance.

Furthermore, the Champaign County public defender's office had been appointed to represent the defendant in December 1983. It had ample time to prepare for trial in ways other than speaking with the defendant. Allowing defense counsel an indefinite continuance in order that she might, at some future time, speak with the defendant would serve no useful purpose under the circumstances of this case. Accordingly, the trial court did not abuse its discretion in denying defense counsel's request for a continuance.

■ Defendant next argues that the trial court improperly ruled that evidence of another burglary, for which the charge was dismissed, was admissible to show defendant's common scheme and intent as to the instant burglary.

It is clear that evidence of other offenses is admissible if relevant for any purpose other than to show a propensity to commit crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821.) The probative value of such evidence must also outweigh its prejudicial effect. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

Here, the trial court ruled that evidence of the Illini Manor burglary was relevant to show a common scheme as well as defendant's intent to commit the Illini Towers burglary. A common scheme was established by the fact that the buildings entered were next door to each other, the burglaries occurred at approximately the same time, and both involved breaking into student housing during Thanksgiving vacation. The evidence also showed that the packages of meat taken from the Illini Manor apartment were still frozen solid at the time that defendant was apprehended. This, when coupled with the fact that defendant was followed nearly continuously after leaving Illini Towers, suggests that defendant committed the Illini Manor burglary immediately prior to entering Illini Towers. Such evidence was relevant to show that at the time defendant entered Illini Towers, he intended to commit another burglary.

Furthermore, in light of the overwhelming evidence of defendant's guilt, it is clear that the evidence of the Illini Manor burglary could not have greatly prejudiced the defendant. Under these circumstances, we conclude that the trial court did not err in admitting this evidence since its probative value outweighed any prejudicial effect.

■■ Finally, defendant contends that the assistant State's Attorney's closing argument was improper. He claims that the prosecution made an improper reference to the defendant's failure to call a witness that was equally available to both parties when it was stated:

"What if Nancy Carter, whoever she is, *** invited [defendant] in? Where is she today? Where is she to testify?"

The State responds that this comment was invited by statements that defense counsel made earlier in her closing argument, specifically:

"[W]e don't know that there was no Nancy Carter who worked on the second and the third floor, who for whatever reason, because this was the person [defendant] was going to see, let him into the building to talk with her.
* * *
I think that's what happened."

In general, it is improper for the prosecution to comment on defendant's failure to produce a witness unless the witness is an alibi witness injected into the case by the defendant. (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247.) It is also clear that a defendant ordinarily cannot claim error where the prosecutor's remarks were in response to and invited by remarks in defense counsel's argument. (*People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) Here, defense counsel suggested in her closing argument that defendant had

entered Illini Towers with the intent to visit Nancy Carter and not with the intent to commit a burglary. Since defense counsel wished the jury to believe that Nancy Carter could have provided defendant with an alibi, the prosecutor's closing remark was invited by defense counsel and was not error.

In any event, defendant was not substantially prejudiced by the prosecutor's comment. (See *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.) In view of the overwhelming evidence of defendant's guilt, any possible error in the prosecutor's argument was harmless and not reversible. *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347.

Accordingly, the State's motion to dismiss the appeal is denied and the judgment of the circuit court of Champaign County is affirmed.

Motion denied, judgment affirmed.

GREEN, P.J., and TRAPP, J., concur.