THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL COLLEY, Defendant-Appellant.

First District (5th Division)   No. 86—2152

Opinion filed August 12, 1988.

Michael J. Pelletier, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Patricia Y. Brown, and Judy L. Groeneveld, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial, defendant was convicted of criminal trespass to property and residential burglary. Judgment was entered only on the residential burglary conviction and he was sentenced to a term of nine years. On appeal, he contends (1) that the State improperly

used its peremptory challenges to exclude black citizens from the jury; (2) he was denied his right to effective assistance of counsel; and (3) he was denied a fair trial by improper prosecutorial comments during closing argument.

At trial, Helen Falkman testified that in September 1985 her son lived in her house at 1829 South 20th Avenue in Maywood, Illinois, but that she visited there approximately once each week. The two-story house had an enclosed front porch, access into which was through a front door, which was kept locked. A mailbox and doorbell were located on the outer side of the front door. Another set of doors divided the front porch from the living room. On each side of the inside door was a standard, combination screen and storm window. The storm windows were not removed and the windows were kept closed. She did not know defendant nor did she authorize him to enter her residence, and she did not own a gun or keep one for protection between the two doors inside the porch. On cross-examination, Mrs. Falkman stated that she was not at the house on September 10, 1985, and, although her son told her that he always locked the front door, she did not know whether it was locked on that date or if a window in the porch had been raised.

Yvonne Mueller testified that she lived next door to Mrs. Falkman's house at 1825 South 20th Avenue in Maywood. She was cutting her grass at about 6:30 p.m. on September 10, 1985, when she noticed a man directly across the street. He walked up and down the block on both sides of the street for about 15 minutes. She went into her backyard but continued to look out in the front and saw the man crossing the street and looking over his shoulder in her direction. The man then entered an old "red junk" car—which had no wheels and had been parked in the driveway of the home of Richard Spears across the street at 1822 South 20th Avenue "for some time"—and remained inside it for approximately one-half hour. When she finished mowing her back lawn, she went inside and to the front window of her home to watch him. He then exited the car, walked to the rear of it, opened the rear door, and after "fiddling around" awhile, he threw an old white towel over his shoulder and walked up on the west side of the street to the corner. He then recrossed the street, walked south past her home and "walked right in to Mrs. Falkman's house" next door. She immediately called the police, and within three to six minutes about six squad cars arrived. The police brought the man, whom she identified as defendant, out on the front porch. About 15 minutes after the police left, Mrs. Spears entered her car, which was also in the Spears' driveway, and drove away. She visited the Falkman house

about three times each week and had never noticed the right front window open or without a screen. However, she had not visited the home on that day and did not know the condition of the screen on that window or whether the front door was locked.

Officer Andrew Lindsey testified that at about 7 p.m., he received a call of a burglary in progress at 1829 South 20th Avenue. Mrs. Mueller directed him to the front of the Falkman house, where he saw a man on the porch near the door. As he began walking toward the house, the man, whom he identified as defendant came out of the enclosed porch and walked down to the sidewalk. He recognized defendant because defendant had grown up in Maywood. In response to his inquiries, defendant said that he was looking for a friend but he did not know the friend's name nor did he know who lived in the house. Officer Robinson then arrived in another squad car and walked into the porch from where he retrieved a blue-steel, rubber-handled, .38 caliber revolver wrapped inside a white towel. After a brief conversation with Mrs. Mueller, he and Robinson went into the porch, where he observed a screen from one of the windows on the floor beneath the window, which was opened about four or five inches. Robinson also showed him where he had found the gun between the screen and front doors. He did not find any pry marks on any of the doors, windows or screens nor was there evidence that the door had been forced.

Officer James Robinson testified that when he arrived on the scene, he entered the porch and noticed that the screen had been removed from the right window and that the window was raised about six inches. As he examined the front door to determine whether entry had been made into the house, he noticed a dirty, stained, white rag on the floor between the two doors. When he picked it up, he found a .38 caliber revolver, loaded with six live rounds of various shells, wrapped inside. On the gun, which he identified in court as the State's exhibit No. 5, were the serial number 63906 and markings "FSS," which he knew to stand for "Frain Security." The towel, gun and six shells were subsequently inventoried at the Maywood police department but one bullet had been lost sometime in the morning of the trial. When shown the bag in which the bullets had been placed, he noted that there was a hole in it.

Patrick Powes, a forensic scientist and fingerprint examiner for the Illinois Department of State Police, testified that he found no latent fingerprints on either the handgun or the shells.

Edward Townsend testified that in 1978 he was employed as a guard by the Andy Frain agency and was issued a .38 caliber, blue-

steel pistol with the markings "FSS 23," but in August 1979 the gun was stolen from his home in a burglary. He identified the State's exhibit No. 5 as the one he owned, but noted that the grip on the handle was different. He did not know defendant and had never given him permission to handle or use his revolver. He admitted that he had been convicted of possession of a controlled substance two months prior to trial.

William Mathis testified that he had been the operations manager of the Andy Frain Security Service since January 1980 and maintained records of all of the agency's weapons. His records disclosed that the .38 caliber revolver with serial number 63906 had been reported stolen on August 15, 1979, and identified State's exhibit No. 5 as the weapon described in his records.

Over objection by defense counsel, all of the State's exhibits were admitted into evidence. The trial court then denied defense counsel's motion for a directed finding on the residential burglary charge but granted his motion for a directed finding on the theft charge and instructed the jurors that the theft count had been dropped and to concern themselves only with the residential burglary count.

On defense, Richard Spears, a retired Army sergeant, testified that he lived at 1822 South 20th Avenue in Maywood with his wife and three children and had known defendant for about 12 years. Defendant had visited him at his home between 12 and 1 p.m. on the day in question. He made arrangements for defendant to return between 7 and 8 p.m. to help him (Spears) with some work on his car. However, he left his home between 5 and 6 p.m. to visit some friends from out of town at their motel in Franklin Park and did not return home until 8:30 p.m. His family was at home when he left but he did not know if they were there between 7 and 8 p.m. On cross-examination Spears stated that he saw defendant three or four times a week and that defendant had been to his home more than 100 times. Mrs. Falkman had been his neighbor and a friend of the family ever since he moved into his home, and he knew that she no longer resided regularly at her house but he did not recall ever discussing that with defendant.

Following argument by counsel, the jury found defendant guilty of residential burglary and criminal trespass to a residence, but judgment was entered only on the burglary conviction. The trial court denied defendant's post-trial motion for a new trial and, after a hearing in aggravation and mitigation, imposed a sentence of nine years. This appeal followed.

OPINION

Defendant first contends that this case should be remanded to the trial court for a hearing, pursuant to the rule enunciated in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, on whether the State violated his equal protection rights by exercising its peremptory challenges during jury selection to prevent black veniremen from serving on his jury solely on account of their race.

■ More than a century ago, the United States Supreme Court ruled that the equal protection clause prohibits racial discrimination in the selection of jurors. (*Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L. Ed. 664.) That principle has been consistently reaffirmed in numerous decisions since *Strauder*, including *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, which was one of several cases presenting the ·recurring question of whether the defendant had met his burden of proving purposeful racial discrimination by the State in jury selection. The *Swain* court ruled that a black defendant could make out a *prima facie* case of purposeful discrimination on proof that the peremptory challenge system was "being perverted" by the systematic exclusion of blacks in case after case. 380 U.S. at 224, 13 L. Ed. 2d at 774, 85 S. Ct. at 838.

In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the Court reconsidered the question of what burden of proof is to be placed on a defendant claiming denial of equal protection through the State's use of peremptory challenges to exclude members of his race from the petit jury. On April 30, 1986, the Court rejected the evidentiary formulation of systematic exclusion set out in *Swain* and held that a defendant may now establish a *prima facie* case solely on evidence concerning the prosecutor's exercise of peremptory challenges at his own trial. To make out such a case, the defendant must first show that he is a member of a recognizable racial group and that the prosecutor has exercised peremptory challenges to remove members of his race from the venire. Second, the defendant is entitled to rely on the "indisputable fact" that peremptory challenges are a jury selection practice that permits discrimination by those of a mind to discriminate. (476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) Finally, the defendant must show that these facts, and any other relevant facts and circumstances, raise an inference that the prosecutor used peremptory challenges to exclude veniremen from the petit jury solely on account of their race. (476 U.S. at 96-97, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1722-23.) The *Batson* court declined to enumerate specific factors and circumstances which would establish a *prima facie* case but, rather, stated that trial

judges, experienced in supervising voir dire, should consider all relevant facts and circumstances which support or refute the inference of a discriminatory purpose in the State's exercise of its peremptory challenges in determining whether a prima facie case has been established. Once it has been determined by the trial court that the defendant has made the requisite showing, the burden then shifts to the State to come forward with a racially neutral explanation for its challenges of those of the prospective jurors of defendant's race, whereupon the trial court then has the duty to decide whether the State engaged in purposeful discrimination. 476 U.S. at 96-98, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1722-24.

The Supreme Court subsequently held, in Griffith v. Kentucky (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, that Batson was to be applied retroactively to all cases pending on direct review or not yet final when it was decided. Accordingly, we have remanded numerous cases tried before the Batson opinion was filed for what is now commonly referred to as a "Batson hearing."

■ The State points out, however, that this case went to trial approximately one month after the Batson decision was rendered and argues, inter alia, that having failed to object during voir dire or at any time prior to his conviction, defendant waived any claim of purposeful discrimination and is not now entitled to a review of the prosecutor's use of peremptory challenges by way of a Batson hearing.

Defendant acknowledges that his trial counsel made no objection to the State's use of peremptory challenges during voir dire, but asserts that the issue should not be deemed waived because (1) he also contends on appeal that he did not receive competent or effective assistance of counsel; (2) the issue was before the trial court at the hearing on his written post-trial motion; (3) the State itself has waived the untimeliness of his claim of discriminatory use of peremptory challenges by failing to argue it during the discussion of this point at that hearing; and (4) the trial court has a sua sponte duty to ensure that racial discrimination is not committed in its presence whether or not the defendant makes a timely objection (People v. Andrews (1988), 172 Ill. App. 3d 394, 402).

Initially, we note that the State's argument that defendant's failure to raise this issue before the jury was empanelled is well-taken, for it is axiomatic that a defendant should not benefit on appeal from his own failure to act, whether intentional or inadvertent (see, e.g., People v. Carlson (1980), 79 Ill. 2d 564, 404 N.E.2d 233). However, like the court in People v. Brown (1987), 152 Ill. App. 3d 996, 505 N.E.2d 397, we also recognize that our responsibility to assure a just

result may sometimes override considerations of waiver. As was held in *Brown,* involving the failure to raise the *Batson* issue in a post-trial motion, a reviewing court should consider even those issues not properly preserved for review where the nature of the error is such that its commission would serve to deny a criminal defendant his constitutional rights. See also *People v. Mitchell* (1987), 163 Ill. App. 3d 58, 516 N.E.2d 500 (where constitutional rights are involved, deference should be given to the plain error rule).

Here, the record, which contains a transcript of the *voir dire* proceedings, discloses that in his written *pro se* post-trial motion, defendant charged that he was tried by a jury "not of my own race" and, citing *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, argued that "where it reasonably appear[s] to the trial court that the prosecutor is systematically excluding blacks from the jury on the basis of their race, the prosecutor is required to prove, without benefit of presumption, the basis of his challenges." Defense counsel also filed a written post-trial motion alleging, *inter alia,* that the prosecution "improperly excluded jurors based on race." When this point was raised by defense counsel at the post-trial motion hearing, the trial court directed him to "give us some facts," to which counsel replied that the prosecution had exercised three of the six peremptory challenges it used to exclude black venire persons and noted that the State had offered "no rational basis" for the exclusions. The prosecutor responded that it was his recollection that the State exercised a total of eight challenges, four of which were applied to black persons but that "at no time did the prosecution exclude any people because of race." The trial court then inquired of defense counsel the basis of his allegation that race was the State's motivation, asking "Is it because of the number that were excluded?" to which defense counsel said, "Correct, and without there being any other rational basis ***." After the trial court recounted the total number of jurors excluded by the State, the defense and the trial court, respectively, the prosecutor stated, "Judge, as I indicated, my recollection—I don't have my trial book with me—but we had reasons for excluding the people we excluded. Some were subjective but at no time did we exclude because of race." Argument then proceeded to another point in the post-trial motion, following which the court, without further comment on this issue and without requiring the State to explain its reasons for excluding the three, or four, black jurors, denied defendant's motion for a new trial.

As noted earlier, it is undisputed that no objection was made during *voir dire* to the State's use of peremptory challenges. However, it

is also noteworthy that when the issue was raised in the defendant's motion for a new trial, the State did not urge as a ground for denial of the motion that the objection was untimely and/or that there was no record of the racial composition of the venire or of the jury but, rather, that the allegation was factually without merit. Although we recognize that the waiver rule generally is enforced against the State only when the State is appealing (*e.g.*, *People v. McAdrian* (1972), 52 Ill. 2d 250, 287 N.E.2d 688), because a conviction may be affirmed on any grounds discernible in the record (*People v. Bolden* (1987), 152 Ill. App. 3d 631, 504 N.E.2d 835), the principle underlying the application of the waiver rule to the State is that it should be estopped from arguing a theory inconsistent with the one in which it acquiesced below (*People v. Bolden* (1987), 152 Ill. App. 3d 631, 504 N.E.2d 835; see, *e.g.*, *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 448 N.E.2d 620). Given that this issue is one of constitutional dimension, that it was raised in defendant's post-trial motion, that the State's comments at the hearing went to the merits of it, and that defendant also separately contends that by reason of numerous acts and omissions of defense counsel, including his failure to object during *voir dire*, he did not receive competent or effective representation at trial, we believe that this is a case in which consideration of this issue is appropriate under the rationale of the plain error doctrine.

■ The State additionally argues, however, that (1) since this issue was not raised until the presentation of his post-trial motion, the record is completely silent as to the racial composition of the venire and the ultimate composition of the jury and, relying on *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 502 N.E.2d 304, maintains that defendant has, therefore, waived review of this issue by failing to make or preserve a proper record; and (2) that in any event, because "the trial court has already determined, [at the hearing on defendant's post-trial motion], that [he] did not establish a *prima facie* case of purposeful discrimination under *Batson*," remandment for a "second trial court *Batson* hearing" would be purposeless and improper.

It is true, as the State argues, that the record does not identify which of the veniremen were black or the racial composition of the jury ultimately selected, and that in *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 502 N.E.2d 304, the court held that absent documentation of such information in the record, the defendant could not establish a *prima facie* case of purposeful discrimination and had, therefore, waived review of the issue. In contrast to *Johnson*, however, in the instant case the prosecutor volunteered—in response to defense counsel's statement that three of the State's six peremptory chal-

lenges were used to exclude blacks—that in fact four of a total of eight challenges were so used. Clearly, the facts here are distinguishable from those in *Johnson*, where "the only indication of the race of any of the prospective jurors came from defense counsel's remarks after *voir dire*" (150 Ill. App. 3d at 1085, 502 N.E.2d at 311). Moreover, since *Batson* does not require complete exclusion of a racial group to prove discrimination (*People v. Johnson* (1987), 159 Ill. App. 3d 991, 513 N.E.2d 852; *People v. Seals* (1987), 153 Ill. App. 3d 417, 505 N.E.2d 1107), we decline to hold that because the record does not reflect the racial composition of the jury the issue has been waived (see *People v. McEwen* (1987), 157 Ill. App. 3d 222, 510 N.E.2d 74), where, by the prosecutor's own admission, as many as four blacks were excluded from the jury through the exercise of the State's peremptory challenges and no reasons for those exclusions were required of or given by the State, notwithstanding defense arguments that such an explanation was necessary.

Finally, for several of the same reasons, we reject the State's assertion that the hearing on defendant's post-trial motion constituted a "*Batson* hearing" whereat the trial court, which "was certainly aware of [the *Batson* decision]," determined, "*sub silentio*," that defendant had failed to make out a *prima facie* case of discrimination thereunder. As noted earlier, defendant submitted a written *pro se* motion in which he alleged that he "was found guilty by a jury not of my race" and argued that where it "reasonably appears" that blacks are being "systematically excluded from the jury on the basis of their race, the prosecutor is required to prove without benefit of presumption the basis of his challenges." In arguing the motion, defense counsel stated that the bases of the motion were that defendant, a black man, was denied his constitutional rights by the prosecution's use of its peremptory challenges to exclude a certain number of blacks and that because the State offered no other "rational basis" for those exclusions, it was defendant's position that they were based solely on race.

Notwithstanding defendant's erroneous reliance in his *pro se* motion on *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, which had been reversed by the Illinois Supreme Court (*People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202), and defense counsel's apparent lack of familiarity with the *Batson* decision, it is our view that defendant did, in substance, allege those factors which under *Batson* he is required to allege to raise an inference of purposeful discrimination, *i.e.*, that he is a member of a recognizable racial group; that the State used peremptory challenges to exclude members

of his racial group from the jury; and that absent any other apparent reason, a presumption exists that the exclusions were based on race.

Nevertheless, although the prosecutor acknowledged that he had used four challenges against black veniremen, he stated simply, and also without reference to *Batson*, that "at no time did [he] exclude any people because of their race. None of those people were excluded because of race," and later, that "my recollection—I don't have my trialbook with me—but we had reasons for excluding the people we excluded. Some of them were subjective, but at no time did we exclude any of those people because of race." Similarly, and more importantly, the trial court's only remarks during the hearing were to ask defense counsel the basis of his assertion that blacks were improperly excluded and to comment that he (counsel), too, had "excused some jurors" and that it (the court), the State and the defense had excused six, seven and eight veniremen, respectively.

We find nothing in the entire dialogue evincing or even suggesting, as the State argues, that the trial court applied the standards set forth in *Batson* or that it determined, albeit *"sub silentio,"* that defendant had failed to establish a *prima facie* case thereunder and that the State was, therefore, under no burden to articulate a racially neutral explanation for its challenges. In the absence of any comment by the trial court on defense counsel's argument that the State had offered "no rational basis" for its exclusion of at least three or four black veniremen; the defendant's *pro se* assertion that the jury members were not of his own race and that in such circumstances the prosecutor was "required to prove the basis of his challenges"; or the prosecutor's reference to his "trialbook"—from which it might have been determinable whether he did, in fact, have the racially neutral reasons he claimed to have had and which the prosecution has long been required to have for excluding black veniremen (*Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L. Ed. 664; *People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816)—we cannot assume that the dictates of *Batson* were considered or followed.

Thus, notwithstanding that this case was tried four weeks after *Batson*, we believe that in the interest of justice it is appropriate to remand this case for a *Batson* hearing. We are not persuaded otherwise by the State's argument that by so doing we will "set a precedent for remanding cases whenever a defendant raises the *Batson* issue for the first time on appeal," for we have attempted to make clear herein that our decision stems from the unique set of facts before us.

Defendant also contends that he was deprived of his right to com-

petent, effective assistance of counsel by reason of his attorney's (1) failure to (a) move to sever an unrelated charge of theft of the gun found at the scene, (b) move that the court strike testimony relating to the theft charge and direct the jury to disregard any such evidence after the court granted his motion for a directed finding on it, (c) object to the admission of the gun into evidence; and (2) repeated references to the theft charge during closing argument. Arguing that he was "entitled to have his guilt or innocence determined solely with reference to the crime with which he was charged," he maintains that he was prejudiced by the admission of evidence relating to the commission of a similar but unrelated offense, *i.e.*, the burglary of Townsend's home and the theft of his service revolver, and that but for counsel's erroneous acts and omissions the jury would not have heard that evidence.

■ Under the standard announced by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by our supreme court in *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005, and *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, a defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that but for counsel's errors the outcome of the proceeding would have been different. (466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In examining counsel's performance, the inquiry is whether counsel's assistance was reasonable in the light of all the circumstances. (466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) In this regard, a reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and avoid interfering with the constitutionally protected independence of counsel or restricting the wide latitude counsel have in making tactical decisions. (466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *People v. Barnard* (1984), 104 Ill. 2d 218, 233, 470 N.E.2d 1005, 1010.) In other words, the adequacy of counsel's performance is to be determined on the basis of the totality of his conduct at trial rather than on isolated events or acts (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936), since a defendant is entitled to competent, not perfect, representation (*People v. Schmidt* (1988), 168 Ill. App. 3d 873, 522 N.E.2d 1317). The *Strickland* court also stated that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" but, rather, may dispose of an ineffective assist-

ance claim on the ground of lack of sufficient prejudice (*Strickland,* 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069-70; *People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256), an allegation of which must be based on more than mere conjecture or second-guessing of counsel's trial strategy or tactics (*People v. Rangel,* 163 Ill. App. 3d 730, 516 N.E.2d 936), or speculation that the outcome might have been different with representation of higher caliber (*People v. Schmidt,* 168 Ill. App. 3d 873, 522 N.E.2d 1317).

■ Initially we note, from a review of the record in its entirety, that defense counsel prepared a pretrial motion for discovery and a "petition to sever charges"; made a concise opening statement in which he posited that the State had no direct evidence linking defendant to the crime and proffered the theory that defendant had gone to the area of the offense to meet a friend who lived across the street; raised numerous objections during direct examination of the State's witnesses, several of which were sustained; thoroughly cross-examined those witnesses, eliciting, *inter alia,* that there were no signs of a forced entry into the house and that defendant's fingerprints were not found on the gun discovered between the doors; successfully argued for a directed finding on the theft charge at the close of the State's case and also argued, albeit unsuccessfully, for a directed finding on the charge of residential burglary; made objections to admission of certain of the State's exhibits; presented the testimony of Richard Spears to support the defense theory that defendant was on that street because he had arranged to meet Spears to help him repair an old car; submitted jury instructions and made objections to several of those submitted by the State; made a forceful closing argument in which he pointed out the lack of certain evidence and argued the weakness of the State's case; presented and argued several factors in mitigation at the sentencing hearing; and filed a multipoint post-trial motion. We find therefrom that counsel's overall participation and conduct in the trial of this case constituted vigorous and effective representation. That his efforts were not successful is not reflective of incompetence. See *People v. McNutt* (1986), 146 Ill. App. 3d 357, 496 N.E.2d 1089.

As to the specific acts and omissions complained of by defendant, we note first that, as stated above, the record does contain a pretrial "petition to sever charges," and although it speaks most directly to the charge of unlawful possession of a weapon—which was thereafter severed—it also noted that defendant was also charged with theft and requested that "the court enter an order severing the charges against [defendant]." Furthermore, as also noted earlier, the theft charge was

ultimately directed out of the case on defense counsel's motion at the close of the State's evidence and the jurors were instructed by the trial court to concern themselves only with the charge of residential burglary. Thereafter, in closing argument, defense counsel commented to the jurors that the evidence concerning the gun had nothing to do with the charge of residential burglary; that it was a "smokescreen" designed to direct their attention to the gun rather than the burglary; and that the theft charge had been stricken because the State lacked evidence. Contrary to defendant's position that these remarks further demonstrated defense counsel's incompetence and caused additional prejudice because they served only to focus the jury's attention on the theft charge, we believe that by these remarks defense counsel (1) did what defendant claims he should have requested the trial court to do, *i.e.*, more clearly admonish the jurors that only the residential burglary charge was before them and that testimony relating to the theft of the gun six years earlier was not to be considered; and (2) attempted, as a matter of trial strategy, to minimize the significance of the gun and, by emphasizing the State's lack of evidence on the theft charge, to make the State's case, as a whole, appear weak. Thus, defendant has failed to establish either incompetence or prejudice under the *Strickland* standards.

Regarding the absence of any objection to the admission of the gun and the bullets, we note that witness Mueller testified that she saw defendant remove a dirty white towel from the trunk of the old car owned by Spears and walk inside of the Falkman home with it, and the responding officers testified that in a search of the porch immediately following defendant's exit from it, they discovered a dirty white towel, inside of which was the loaded .38 caliber revolver. Based on this testimony, the gun and bullets were, therefore, properly admissible physical evidence (*People v. Moody* (1979), 75 Ill. App. 3d 674, 394 N.E.2d 643), and, as such, there is no basis for defendant's claim that defense counsel performed ineffectively by failing to object to their admission (see *People v. McNutt* (1986), 146 Ill. App. 3d 357, 496 N.E.2d 1089).

Defendant's final contention is that he was denied a fair trial by the prosecutor's references in closing argument to the theft charge on which the trial court had entered a directed finding and to the unlawful use of weapons charge which had been severed from this case. He argues that the comments were designed to arouse the prejudices of the jury and suggest that defendant had a propensity to commit residential burglary.

■ Courts in this State have repeatedly held that a prosecutor is

allowed considerable latitude in closing argument (*People v. Diaz* (1988), 169 Ill. App. 3d 66, 522 N.E.2d 1386), as long as the argument is based on the evidence or reasonable inferences therefrom (*People v. Henne* (1988), 165 Ill. App. 3d 315, 518 N.E.2d 1276). However, even where improper remarks have been made, reversal is not warranted unless they were so prejudicial as to have constituted a material factor in the defendant's conviction (*People v. Sayles* (1985), 130 Ill. App. 3d 882, 474 N.E.2d 870). A determination of the propriety of remarks made during closing argument is a matter generally left to the discretion of the trial court (*People v. Adams* (1982), 106 Ill. App. 3d 467, 435 N.E.2d 1203) and will not be disturbed absent a clear showing of an abuse of that discretion (*People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183).

■ In his brief, defendant quotes five passages from the prosecutor's rebuttal argument which he posits were improper references to offenses not before the jury. The substance of the prosecutor's remarks was that the only reasonable inference from the evidence that defendant entered the house with a loaded gun hidden inside a rag was that he intended "to use it in case of any trouble once he gets in that house; *** to use it as a weapon to keep anybody away." The State maintains, as it did in response to defense counsel's objections in the trial court, that these comments were not references to the theft or unlawful use of a weapon charges but, rather, fair evidentiary inferences that defendant had not mistaken the residence as that of his friend, as he told the police but, rather, that he entered it with the intent to commit a felony therein—one of the elements necessary to prove residential burglary. We have read the argument in its entirety and are satisfied that the comments at issue were made for the purpose explained by the State and not as references to any other offenses. (See *People v. Cox* (1979), 71 Ill. App. 3d 850, 389 N.E.2d 1238.) In any event, we note that the trial court sustained three of defense counsel's objections during this line of argument, ordered the remarks stricken and later instructed the jury to disregard any evidence or statements which were refused or stricken by the court and thereby cured any prejudice which might otherwise have resulted. See *People v. Shum* (1987), 117 Ill. 2d 317, 348, 351, 512 N.E.2d 1183, 1194-95.

We are not persuaded otherwise by defendant's argument that the trial court's actions did not cure the prejudice because the prosecutor "ignored the trial court's admonishments and continued to argue in the same vein." During one portion of his argument, the prosecutor said "it's obviously his gun" and "[i]f you don't believe that this is his

gun, then you can find him not guilty." It was in response to defense counsel's objections that "they're talking about charges not before the *** jury" that the prosecutor expounded:

"Don't let me mislead you by saying that we are now arguing that this gun was stolen. That charge is not before the Court, in any way. We are not in any way arguing that this is a stolen gun. That charge is not before you. This is Mr. Townsend's gun. You can disregard Mr. Townsend's testimony. We don't care whose gun it is. We're arguing that the gun is being used in the commission of a burglary, and the theft charge, that he stole it or that he was in possession of a stolen gun is not before you at all. It's not even to be considered. What we're saying is that he's using this gun to commit a burglary, like many burglars do."

Having stated as the basis of his objections that the prosecutor was arguing charges not before the jury, defendant cannot now complain that the prosecutor "ignored the trial court's admonitions" by giving what we consider an invited and legitimate response thereto. The comments were also invited by the suggestion in defense counsel's closing argument that because the theft charge had been dropped, all evidence relating to the gun was irrelevant. Furthermore, since the prosecutor, in the above-quoted passage, not only reminded the jury—just as defense counsel did in his closing statement—that the theft charge had been dropped for lack of evidence but also advised them to disregard Townsend's testimony—as defendant argues his counsel should have requested the trial court to do—we cannot agree that defendant was prejudiced thereby.

For the reasons stated, we affirm the judgment and sentence of the trial court in all respects except as to the court's ruling on that portion of defendant's post-trial motion relating to the issue of the State's discriminatory use of peremptory challenges. With respect thereto, we remand the case to the trial court for a hearing on the present record and any additional record the parties decide to make for the purpose of determining whether, pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the prosecutor engaged in purposeful racial discrimination in exercising his peremptory challenges. If the court finds that a *prima facie* showing of purposeful discrimination has been made, the court is directed to determine whether or not there is a neutral explanation by the State for the exercise of those challenges. In the event the court finds that the prosecutor did not purposefully discriminate, the court is directed to confirm the judgments and sentence. If, however, the court finds that

814

the prosecutor did engage in purposeful discrimination, the court is directed to order a new trial. See *People v. Johnson* (1987), 159 Ill. App. 3d 991, 513 N.E.2d 852.

Affirmed in part and remanded with directions.

LORENZ, P.J., and MURRAY, J., concur.