THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARNEST WILSON *et al.*, Defendants-Appellants.

Third District    Nos. 3—94—0382, 3—94—0384 cons.

Opinion filed June 26, 1995.—Rehearing denied July 31, 1995.

Dennis Giovannini and Herbert L. Goldberg, both of Giovannini & Goldberg, of Chicago, for appellant Earnest Wilson.

Thomas Peters, of Murphy, Peters & Davis, of Chicago, for appellant Charles Harris.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendants Earnest Wilson and Charles Harris, residents of Stateville Correctional Center, together with another inmate, Fred Collins, were charged with the 1981 murder of fellow inmate George Bailey (Ill. Rev. Stat. 1979, ch. 38, pars. 5—2(c), 9—1(a)(1)). They were tried jointly, found guilty and sentenced to life imprisonment. Their convictions and sentences were sustained on appeal to this court in an order issued June 2, 1986 (*People v. Harris* (1986), 143 Ill. App. 3d 1163, 507 N.E.2d 557 (unpublished order under Supreme Court Rule 23)), and by the Illinois Supreme Court in an opinion filed on June 20, 1988 (*People v. Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335). In December of 1991, defendants filed petitions for post-conviction relief. After an evidentiary hearing, the petitions were denied in a written opinion dated April 29, 1994.

In this appeal, defendants contend that the trial court erred in rejecting their claims that trial counsel was ineffective because of conflicts of interest, and that appellate counsel was ineffective for failure to raise an issue pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Defendants request that their convictions and sentences be vacated and that they be granted a new trial.

Initially, defendants contend that a fee-splitting arrangement between attorney Earl Washington, defendant Wilson's appointed counsel, and attorney Joshua Sachs, defendant Harris' appointed counsel, deprived them of their sixth amendment right to effective assistance of counsel. Defendants theorize that, because Washington had a monetary interest in co-counsel Sachs' participation in the trial, he pursued a "unified defense" theory at trial. Defendants claim that they would have testified to a prior confrontation between Collins and the victim which gave Collins alone a motive to commit the murder. At the post-conviction hearing, Harris also stated that he was denied his right to testify because his testimony would have incriminated Wilson. The defendants charge that their testimony was not put on because of Washington's conflict of interests, which they did not learn of until after their convictions.

The type of conflict asserted here is not a *per se* conflict,

because the attorneys' financial agreement would not have benefitted from an unfavorable verdict for the defendants. (See *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.) Thus, the conflict posed in this case requires reversal of defendants' conviction only upon a showing that the conflict actually affected Washington's performance. See *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.

Where a defendant charges inadequate representation for failure to introduce the defendant's own favorable testimony at trial, he must also establish that the testimony would have been available at the time of trial. Without a showing that the defendant contemporaneously asserted his right to testify, it will be assumed that he acquiesced in counsel's advice not to testify. (*People v. Thompkins* (1994), 161 Ill. 2d 148, 641 N.E.2d 371, citing *People v. Brown* (1973), 54 Ill. 2d 21, 294 N.E.2d 285.) Thus, a defendant's claim advanced on post-conviction that he told his attorney prior to trial that he wished to testify does not establish, in itself, that trial counsel's advice or performance resulted from an actual conflict of interests. *Thompkins*, 161 Ill. 2d 148, 641 N.E.2d 371.

In this case, it appears that attorney Washington represented his client's interests competently, but with something less than full cooperation of codefendants Harris and Collins. Prior to trial, Washington filed a motion to sever on the ground that Wilson's defense was antagonistic to his codefendants'. At the hearing on the motion, Washington asserted that Harris and Collins could testify that Wilson did not order them to kill Bailey. Washington admitted, however, that he could not assume that the codefendants would take the stand to testify or even what they would say. The trial court ruled that no antagonism had been established, and on review the decision was sustained. See *Harris*, 123 Ill. 2d 113, 526 N.E.2d 335.

At their post-conviction hearing, defendants stated that they were precluded from testifying because of attorney Washington's concern that Collins could get the death penalty or that Harris' testimony would incriminate Wilson. Harris admitted, however, that he never told Washington or Sachs what he would have testified to if called to the stand. Moreover, there was no evidence that either defendant contemporaneously asserted his right to testify at trial.

Given that the decision by the trial court to try the defendants jointly was not error, we agree with the State that the "unified defense" strategy ultimately directed by attorney Washington was probably the best strategy to pursue at trial. Under the circumstances, it is improbable that the defendants would have waived their fifth amendment rights to testify at the trial. Thus, we agree with the trial court that defendants have failed to establish that the

fee-splitting arrangement between Washington and Sachs, though clearly illegal, actually affected Washington's performance, such that defendants were denied their right to effective assistance of counsel at trial.

Defendants' charge of ineffective assistance of appellate counsel for failing to advance a *Batson* issue prior to the disposition of their direct appeal is more troubling. All of the defendants and the victim in this case were black. At the time of defendants' trial in 1983, defense counsel objected to the racial composition of the venire and moved to dismiss based on the State's use of peremptory challenges to exclude blacks from the jury. The trial court denied defendants' motions for failure to establish systematic exclusion of blacks over time, pursuant to *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. Ultimately, the State used peremptory challenges to exclude six of seven potential black jurors. One black woman served on the jury.

In their direct appeal to this court, defendants raised numerous issues, but they did not resurrect a challenge to the racial composition of the venire or the State's use of its peremptory challenges. Then, during the pendency of defendants' appeal in this court, the Supreme Court handed down its decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. *Batson* lessened the defendants' burden by allowing them to rely solely on the facts of their case to establish racial discrimination in the jury selection process. (See *People v. Pecor* (1992), 153 Ill. 2d 109, 606 N.E.2d 1127.) The *Batson* rule was later determined to apply retrospectively to cases, such as this, which were pending on direct review at the time *Batson* was decided. (*Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708.) Defendants' cause thereafter proceeded to the Illinois Supreme Court; however, appellate counsel never sought to supplement their briefs with a *Batson* issue.

Those cases pending review and presenting a "viable" *Batson* issue were remanded to the circuit court in the exercise of the supreme court's supervisory authority. The circuit courts were directed to conduct expedited two-step evidentiary hearings allowing the defendants an opportunity to make a *prima facie* case of discrimination and, if made, requiring the State to provide a neutral explanation with respect to the questioned peremptory challenges. (*People v. Hooper* (1987), 118 Ill. 2d 244, 506 N.E.2d 1305.) A "viable" *Batson* issue was present when the record showed that a *Swain* objection had been made based on the prosecutor's use of peremptory challenges which excluded potential black jurors. (See *Hooper*, 118 Ill. 2d at 245-54, 506 N.E.2d at 1305-09 (Ryan, J., specially concurring).) The

remanded cases were retained on the reviewing court's docket, thus allowing for a direct review of the trial court's *Batson* determination. See, *e.g.*, *People v. Wiley* (1993), 156 Ill. 2d 464, 622 N.E.2d 766.

■ The State correctly notes that appellate counsel's judgment as to what issues should be raised and argued on appeal is generally not to be questioned, and may be grounds for post-conviction relief only if patently erroneous. (*People v. Collins* (1992), 153 Ill. 2d 130, 606 N.E.2d 1137.) In this case, it is clear that appellate counsel's failure to bring the *Batson* issue to the court's attention was patently erroneous and prejudicial to defendants. There was no "down side" to appellate counsel's supplementing the briefs. Appellate counsel's omission deprived defendants of a certain opportunity to present evidence to substantiate their claim of purposeful racial discrimination and a potential review of the trial court's *Batson* ruling on the sufficiency of their *prima facie* case or the State's explanation. The loss of such opportunity cannot conceivably be attributed to appellate strategy and must be deemed ineffective assistance under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Our finding of ineffective assistance of appellate counsel does not end the inquiry in this case. Neither party disputes that the *Batson* issue was adequately preserved in the trial court. They also agree that defendants are not precluded from asserting the issue for the first time in their post-conviction charges of ineffective assistance of appellate counsel. (See *People v. Partee* (1994), 268 Ill. App. 3d 857, 645 N.E.2d 414.) It is unclear from their arguments, however, whether a *Batson* hearing was conducted within the post-conviction evidentiary hearing.

The State takes the position that the trial court properly determined that defendants had failed to make a *prima facie* case of racial discrimination in the State's use of peremptory challenges. Defendants' brief of the issue in this court is merely a copy of the memorandum of law submitted in support of defendants' petition in the trial court.

Although the argument for finding a *prima facie* case of discrimination was briefed in the trial court, the report of proceedings dispels the notion that a *Batson* hearing was ever held. In fact, the record demonstrates that the trial judge inquired of defendants' post-conviction attorneys whether they were taking issue directly with the jury selection process or arguing only that appellate counsel was ineffective for failing to raise the issue on appeal. Counsel responded that they were arguing only the latter, and the State then announced that the prosecuting State's Attorney would not be called upon to testify.

Both parties then argued whether appellate counsel's failure to advance a *Batson* issue on review constituted ineffective assistance under the *Strickland* test. The gist of the State's argument was that generally appellate counsel is not ineffective for not raising issues counsel deems to be lacking in merit. The State posited that since the supreme court had remanded other cases *sua sponte* for *Batson* hearings, but not defendants' case, it was apparent that the supreme court agreed with appellate counsel that the jury selection process in this case did not merit an evidentiary hearing.

At the conclusion of arguments, defendants submitted exhibits containing the report of the jury *voir dire*, which they urge in this appeal established their *prima facie* case of racial discrimination. However, in rejecting defendants' petitions for post-conviction relief, the trial court made no finding as to whether defendants' evidence was sufficient to establish a *prima facie* case under *Batson*. The court merely noted that the Illinois Supreme Court had remanded other cases in a posture similar to defendants' in May of 1987, despite appellate counsel's waiver of the issue. The court then "adopt[ed] the reasoning as set forth in the [P]eople's argument" and ruled that appellate counsel was not constitutionally ineffective.

On the state of the record, we thus find it somewhat disingenuous for the State to argue in this appeal that the trial court "properly determined that under *Batson* defendants had failed to make a *prima facie* case." *Batson* findings may not be determined by the trial court "*sub silentio.*" (*People v. Colley* (1988), 173 Ill. App. 3d 798, 528 N.E.2d 223.) Moreover, had the trial court in fact made a *Batson* ruling based on the matters presented to it, the court would have been faulted for conducting the type of "consolidated proceeding" proscribed by the supreme court in *People v. Hope* (1990), 137 Ill. 2d 430, 560 N.E.2d 849, and *People v. Garrett* (1990), 139 Ill. 2d 189, 201, 564 N.E.2d 784, 789-90 (court cautioned against "collapsing what ought to be a methodical *Batson* hearing procedure into an undifferentiated review of defense and State contentions").

■ Accordingly, we hold that the trial court erred in ruling that appellate counsel was not ineffective for failing to raise a *Batson* issue for review prior to the supreme court's decision in this case on June 20, 1988. We remand this cause for an expedited *Batson* hearing and a ruling on defendants' evidence of racial discrimination in the jury selection process. If the court determines that a *prima facie* case is made and the State cannot thereafter provide a neutral explanation for its use of the peremptory challenges at issue, then defendants are entitled to a new trial. (See *Colley*, 173 Ill. App. 3d 798, 528 N.E.2d 223.) In the exercise of this court's authority under

Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we retain jurisdiction pending the trial court's decision. (See *Garrett*, 139 Ill. 2d at 195-96 (citing with approval *People v. Jones* (1988), 177 Ill. App. 3d 663, 532 N.E.2d 543).) Both defendants and the State will be allowed to supplement their briefs for our further consideration of the court's *Batson* determination.

The judgment of the circuit court of Will County is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded with directions.

STOUDER, P.J., and McCUSKEY, J., concur.