The People of the State of Illinois, Plaintiff-Appellee, *v.* Richard E. Hellemeyer *et al.*, Defendants-Appellants.

(No. 74-135; ■■■■■■■■■■)

Fifth District—May 6, 1975.

Stephen P. Hurley and John H. Reid, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Donald F. Conaway, State's Attorney, of Carlyle (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

After a jury trial in the circuit court of Clinton County the defendants were convicted of three counts of burglary and one count of possession of burglary tools. Follwing a sentencing hearing defendant Sanders was sentenced to a term of imprisonment of not less than 3 years nor more than 10 years, and defendant Hellemeyer was placed on probation for a period of 5 years.

The defendants' first contention on appeal is that their convictions were improperly obtained as a result of an illegal arrest which was not based upon probable cause. The defendants filed a pretrial motion to quash the arrest and to suppress the evidence taken pursuant to that arrest. An evidentiary hearing was conducted with regard to that motion on October 2, 1973. At that hearing Laurel Wuest, a police officer for the city of Breese, Illinois, testified that he arrested the defendants and a third man in the early morning hours of May 2, 1973. At about 3:15 A.M. on that date Wuest observed a Pontiac automobile being driven south on Main Street in Breese. There were two men in the car and the car was being driven so slowly that it was almost stopped. Wuest drove his police car around the block and observed that the car had been turned around and was being driven very slowly in a northerly direction on Main Street. Wuest then radioed to the sheriff's department to obtain a license check on the automobile. Wuest followed the vehicle for only a few blocks before driving in another direction. He saw the same car again about 15 minutes later, and the vehicle was occupied by three individuals at that time. Wuest had just received information from the sheriff's department that the car was registered to a Richard Hellemeyer and that Hellemeyer was considered a "hot number" and that "taverns and juke boxes were his specialty." The sheriff's radio dispatch also advised Wuest that the car that had been followed by

Wuest had been involved in an incident of a suspicious nature earlier that evening at the V and H Lounge in Breese. Two witnesses, the bartender of the lounge and the mayor of Breese, had informed the police that they saw a man run past the front of the building, throw something into a car and lie down on the back seat of the car. Two customers who had just entered the lounge and ordered two bottles of beer then ran from the building, entered the car and left the area at a high speed. The witnesses obtained the license number of the car, and the number was the same as that of the car being followed by Wuest. After receiving the information from the sheriff's department, Wuest followed the vehicle west on Route 50, radioed for assistance and informed the dispatcher that he was going to stop the vehicle in Trenton, Illinois. Wuest did stop the automobile at Trenton and found that defendant Hellemeyer was the driver of the car, defendant Sanders was also in the front seat and a third man was alone in the back seat. Hellemeyer got out of his vehicle and produced a driver's license for officer Wuest. Wuest then observed that the other two individuals in the car were drinking beer. Wuest then looked into the car through the windows and saw several cans of beer, a brown bottle, two walkie-talkies, a nail bar, and a screwdriver. Wuest then found two open cans of beer in the front seat of the car and noticed the odor of alcohol on Hellemeyer's breath. At that point, Wuest informed Hellemeyer that he was under arrest for illegal transportation of liquor. At about that time David Huff, a police officer for the city of Trenton arrived at the scene as did Wilfred Hilmes, the mayor of the city of Breese. Hilmes informed officer Wuest that the defendants were the two men who were seen speeding away from the V and H Lounge earlier in the evening. He also identified the defendants' automobile as the same vehicle that was involved in the incident. Pursuant to Officer Wuest's orders Hellemeyer then drove his car to the Clinton County sheriff's office where Hellemeyer was charged with the illegal transportation of alcohol and Sanders was held pending investigation. At about 5 o'clock that morning Wuest proceeded to the Turf Bar in Breese. He did this because when he had first seen the defendants earlier that evening they were driving very slowly past the Turf Bar and looking toward the bar. Upon arriving at the Turf Bar, Wuest observed that the doors to the bar had been pried open. Based upon the evidence summarized above, the trial court denied the defendant's motion to quash the arrest and to suppress the evidence.

■■ The first question to be answered is whether officer Wuest was justified in stopping the defendant's vehicle. The relevant statutory

provision is section 107—14 of the Code of Criminal Procedure (Ill. Rev. Stat., ch. 38, par. 107—14), which provides that:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense    *    *    *."

While a police officer's "inarticulate hunch" can never justify his stopping an individual (*People v. Watson,* 9 Ill.App.3d 397, 292 N.E.2d 457), the above statute dictates that something less than probable cause is required for a police officer to make a stop in accordance with his investigative function. (*People v. Moorhead,* 17 Ill.App.3d 521, 308 N.E.2d 381; *People v. Thomas,* 9 Ill.App.3d 1080, 293 N.E.2d 698; *People v. Keith,* 7 Ill.App.3d 1071, 289 N.E.2d 103.) In *People v. Lee,* 48 Ill.2d 272, 269 N.E.2d 488, our supreme court found that sections 107—14 and 108—1.01 of the Code of Criminal Procedure (Ill. Rev. Stat., ch. 38, pars. 107—14, 108—1.01) were codifications of the United States Supreme Court's decisions in *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868, and *Sibron v. New York,* 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct 1889. It was held in *Lee* that the Illinois statute was not designed to be more restrictive than the Supreme Court's delineation in *Terry* and *Sibron.* In *Terry* the Supreme Court held that a police officer was justified in stopping a person for the purpose of investigating possible criminal behavior even though there was no probable cause to make an arrest. The court held that to justify such a stop a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (392 U.S. 1 at 21, 20 L.Ed.2d 889, 906, 88 S.Ct. 1868, 1880.) In determining whether a stop is reasonable, the facts are to be judged against an objective standard, to wit:

> "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (392 U.S. 1, 22, 20 L.Ed.2d 889, 906, 88 S.Ct. 1868, 1880.

■■ Applying *Terry* to the facts of the instant case, we find that officer Wuest was justified in making the stop of the defendants' automobile for investigative purposes. Wuest first observed the defendant's automobile being driven very slowly past several business establishments at about 3 o'clock on the morning in question. Two men were in the car at that time. A few minutes later officer Wuest saw the same car with three individuals inside. He had received the information concerning

the incident at the V and H Lounge. According to that information three men were seen speeding away from the lounge in the automobile which Wuest had been following. The circumstances concerning the men's departure from the V and H Lounge were of a highly suspicious nature. Wuest had also received information concerning defendant Hellemeyer's reputation. While these facts did not constitute probable cause to arrest the defendants, they did provide justification for the stop of the automobile for investigative purposes.

■ The next question is whether facts occurring subsequent to the stop of the automobile justified the arrest of the defendants. After Officer Wuest stopped the defendants' vehicle, Wuest and Hellemeyer got out of their cars. Wuest then observed that the two other men in Hellemeyer's car were drinking from beer cans. Wuest detected the odor of beer emanating from Hellemeyer's breath and then seized two open cans of beer from the car. At that point, Wuest had probable cause to believe that the defendants had violated section 11—502 of the Vehicle Code (Ill. Rev. Stat., ch. 95½, par. 11—502), a provision stating that no person shall transport, carry, possess or have any alcoholic liquor in the passenger area of a motor vehicle except ·in the original package and with the seal unbroken. Wuest was justified, therefore, in arresting the defendant. Ill. Rev. Stat., ch. 38, par. 107—2(c).

The defendants also contend that the court erred in failing to suppress certain evidence seized from Hellemeyer's automobile. They argue that the complaint for search warrant signed by Officer Wuest did not allege facts sufficient to establish probable cause to believe that three burglaries had been committed and that the items listed in the complaint could be found in Hellemeyer's automobile. The complaint was signed by Officer Wuest and alleged that the complaint had probable cause to believe that certain listed items which were taken in three burglaries could be found in Hellemeyer's car. The three burglaries occurred at the Turf Lounge in Breese, Illinois, at Por O'Smitty's Tavern in Carlyle, Illinois, and at Rickhoff's Tavern in Albers, Illinois. A search warrant was issued, and the articles listed in the complaint were subsequently found in Hellemeyer's automobile. The motion to suppress the evidence was denied, and the items were admitted into evidence at the trial.

■■ A search warrant will not properly issue unless the complaint alleges facts sufficient to establish probable cause. (Ill. Rev. Stat., ch. 38, par. 108—3; *People v. George,* 49 Ill.2d 372, 274 N.E.2d 26.) Probable cause exists where facts and circumstances within the knowledge of the affiant are sufficient in themselves to warrant a person of reasonable caution to believe that the law is being violated and that evidence is on the premises to be searched. (*People v. George; People v.*

*Jefferson,* 25 Ill.App.3d 445, 323 N.E.2d 495.) The complaint for search warrant in the instant case alleged that the Turf Lounge was burglarized on the evening in question, that Hellemeyer's automobile had been seen by Officer Wuest being driven very slowly past the Turf Lounge at about 3 A.M., that the automobile was later stopped by Wuest, that by looking into the car Wuest could see a Michelob beer bottle that had been used as a bank and that the bottle is one of the items that was reported to be missing from the Turf Lounge. The complaint also included facts concerning the incident at the V and H Lounge. Those facts are relevant because the Turf Lounge is located very close to the V and H Lounge. We find that the complaint did establish probable cause to believe that items taken from the Turf Lounge may be found in Hellemeyer's automobile. Therefore, the search warrant was properly issued as to those items.

■■ The complaint for search warrant did not allege any facts, however, which suggested that the defendants or Hellemeyer's automobile were involved in the burglaries at Rickoff's Tavern or at Por O'Smitty's Tavern. Probable cause was not established, therefore, to justify a search of Hellemeyer's car for items taken in those burglaries. The defendant argues that, even if probable cause was shown to search Hellemeyer's car for items taken from the Turf Lounge, the entire search warrant is invalid because it listed items taken in all three burglaries. We disagree. As stated above, the search warrant did properly issue to search Hellemeyer's automobile for the goods taken in the Turf Lounge burglary. The inclusion of goods taken in the other two burglaries, while technically incorrect, did not prejudice the defendants. When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search, that item may be used as evidence even though it was not one of the items that the officer was properly searching for. (*Abel v. United States,* 362 U.S. 217, 4 L.Ed.2d 668, 80 S.Ct. 683; *People v. Robinson,* 40 Ill.2d 453, 240 N.E.2d 630; *People v. Hester,* 22 Ill.App.3d 118, 319 N.E.2d 301.) Thus, if the property taken from Rickoff's Tavern and from Por O'Smitty's Tavern had not been mentioned in the search warrant in the instant case, the police could still have searched Hellemeyer's automobile and seized the property which had been taken in all three reported burglaries. All those items could have been used as evidence against the defendants. A holding that the items could properly be seized if they were not included in the search warrant but that they could not be seized if they were included in the search warrant is without reason. Since probable cause was established to search Hellemeyer's automobile, the inclusion in the search warrant of items which were taken in burglaries other than the one at the Turf Lounge did not result

in a greater invasion of Hellemeyer's privacy than was justified. For the foregoing reasons, we hold that the court did not err in denying defendants' motion to suppress the evidence taken pursuant to the search of Hellemeyer's automobile or in admitting the items into evidence.

The defendants next contend that they were denied a fair trial because of several alleged errors. They maintain that the State committed reversible error in eliciting evidence concerning the arrests of both defendants for an unrelated offense. Upon cross-examination of defendant Hellemeyer, the State's attorney asked whether Hellemeyer knew a certain individual. After receiving an affirmative response, the State's attorney then elicited the information that the individual had been arrested for the offense of theft and was presently residing in the county jail. When the prosecutor asked Hellemeyer whether he was with the other individual at the time of the arrest, defense counsel objected to the question. At a conference out of the presence of the jury, the State's attorney informed the court that he was attempting to impeach Hellemeyer's testimony by introducing evidence of a past felony conviction. The prosecutor was then permitted to ask Hellemeyer whether he knew who was present when the individual in question was arrested for the offense of theft. Hellemeyer responded that he and defendant Sanders were both present at the time. Defense counsel then objected to the evidence and moved for a mistrial, but the objection was overruled. The prosecutor did not introduce evidence that either of the defendants had a prior felony conviction and did not elicit any further testimony relative to an arrest for the offense of theft.

■■ It is well established that evidence of a prior arrest, unrelated to the charge in question, may not be used against the accused. (*People v. Bennett*, 413 Ill. 601, 110 N.E.2d 175; *People v. Hudson*, 7 Ill.App.3d 333, 287 N.E.2d 297.) The prosecutor's cross-examination of Hellemeyer in the instant case created the inference that both defendants had been arrested with another individual for the offense of theft. This was error. The State admits, in fact, that error was committed but argues that the error was harmless. We need not determine whether this error, standing alone, was harmless because we find other errors in the record.

The defendants also contend that the State erred in eliciting testimony which suggested that the defendants had exercised their rights to remain silent while in police custody. In questioning Officer Wuest, the prosecuter educed the testimony that neither defendant made any statements to the police concerning the items found in Hellemeyer's car. In questioning another police officer, the prosecutor elicited testimony that the defendants were informed of their rights in the officer's presence but did not make any statements in his presence. The officer then stated

in response to the prosecutor's questions that defendant Hellemeyer had signed a statement of rights and then made a telephone call to his attorney. The officer then stated that defendant Sanders had refused to sign a statement of rights. Defense counsel objected, but the objection was overruled.

■■ It is error to permit the prosecutor to prove, over defendant's objection, that the defendant had refused to make a statement to the police. (*People v. Lewerenz*, 24 Ill.2d 295, 181 N.E.2d 99; *People v. Hughes*, 11 Ill.App.3d 224, 296 N.E.2d 643.) In *Miranda v. Arizona*, 384 U.S. 436, 468, 16 L.Ed.2d 694, 720, 86 S.Ct. 1602, 1625, the Supreme Court stated (footnote 37):

> "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

The record suggests that the prosecution in the instant case purposely elicited testimony which suggested that the defendants exercised their privilege to remain silent during police custodial interrogation. This was error.

The defendants also contend that they were prejudiced by the introduction of evidence concerning a loaded gun which was found in the trunk of Hellemeyer's automobile. The State called witnesses who testified that a loaded gun was found in a bucket in the trunk of Hellemeyer's car. The gun and the bullets were introduced into evidence. The evidence was relevant at the time it was introduced because defendant Hellemeyer was being tried for the offense of unlawful use of weapons as well as for burglary and possession of burglary tools. At the conclusion of the State's case, however, defense counsel moved for a directed verdict as to the charge of unlawful use of weapons, and the State responded by voluntarily withdrawing that charge. At that point any evidence concerning the gun found in Hellemeyer's car became irrelevant. The only witness called by the defense was Hellemeyer. He was asked no questions and gave no answers on direct examination relevant to the gun which was found in his car. On cross-examination, however, the prosecution questioned Hellemeyer about the gun. Hellemeyer testified that he had purchased the gun from an individual and that the gun was in the trunk of his car on the date of his arrest. Defense counsel then objected to the State's line of questioning on the ground that, since the unlawful use of weapons charge had been dropped, any testimony concerning the gun was irrelevant. Defense counsel also argued that the testimony was prejudicial and moved for a mistrial.

The court overruled the objection.

■■ We agree with the following statement made in *United States v. Reid*, 410 F.2d 1223, 1226 (7th Cir. 1969):

> "The introduction of testimony concerning dangerous weapons found among the belongings of a person charged with a crime, no part of which depends upon the use or ownership of the weapon, has consistently been regarded as prejudicial error requiring a new trial."

Accordingly, we find that the State erred in questioning defendant Hellemeyer upon cross-examination about the gun found in his automobile.

The defendants have raised other issues which we deem unnecessary to consider. We find that, in light of the errors committed during the trial, the defendants were denied a fair trial. The judgments of the circuit court of Clinton County are therefore reversed, and the cause is remanded for a new trial.

Reversed and remanded.

G. MORAN and KARNS, JJ., concur.