THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFRED COOK, Defendant-Appellant.

First District (4th Division)   No. 83—277

Opinion filed December 13, 1984.

James J. Doherty, Public Defender, of Chicago (Thomas F. Bomba, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Mary Ann Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ROMITI delivered the opinion of the court:

In a bench trial, defendant, Alfred Cook, was convicted of murder, armed violence and unlawful use of weapons. He received concurrent sentences of 25 years for murder, 15 years for armed violence, and five years for unlawful use of weapons. On appeal defendant contends: (1) his guilt was not proved beyond a reasonable doubt; (2) testimony that defendant said he was going to "get even" with the victim was inadmissible hearsay; (3) defendant's armed violence conviction must be vacated because it was based on the same physical act underlying his murder conviction; (4) defendant's conviction for felony unlawful use of weapons must be vacated because he was only charged with misdemeanor unlawful use of weapons and the enhancing element was not proved at trial.

We affirm defendant's conviction and sentence for murder, vacate his conviction for armed violence, and reduce his felony unlawful-use-of-weapons conviction to a misdemeanor conviction, also reducing his sentence for that crime to 364 days, to be served concurrently with his sentence for murder.

The State's evidence at trial was as follows. On the evening of April 9, 1982, Adrian Driver, defendant, Pierre Jordan, and Thomas Hughes went up to the apartment of Hughes' girlfriend on the fifth floor of a Chicago Housing Authority building at 527 East Browning Avenue. Hughes engaged in an argument with his girlfriend while the others waited in the hall. According to Hughes, Driver then ran downstairs and outside to see his girlfriend. The defendant and Jordan got on the elevator. About five seconds later Hughes heard two shots. Driver testified that he had run down the stairs and about 50 yards to the entrance of another building, where he momentarily turned back and saw the defendant and Jordan on the porch in front

of the 527 East Browning building. He then walked through the other building and about 10 seconds later heard two shots. Driver was wearing a black leather jacket and a black cap that night.

Donna David lived on the ground floor of the 527 building, adjoining the front entrance. She testified that she heard two shots several seconds apart. The first shot came from directly in front of the elevator. In between the shots she saw a man wearing a black jacket and hat run toward an adjoining building. The second shot came from closer to the front entrance. She hesitated for a few seconds or minutes and then opened her door. She heard the sound of someone walking swiftly to the back of the building and then went outside the front entrance and saw Pierre Jordan lying there. It was stipulated that the examining pathologist determined that Jordan's death was caused by two bullet wounds to the brain.

Gregory Jones testified that at about 8:45 p.m. that day he saw the defendant and Jordan in front of the 527 building. He spoke to them briefly and then went inside the building, where he stopped to urinate in a hallway. He heard two shots from the front hallway and came out to find Jordan lying on the ground. He saw the defendant inside the building, about 10 steps from Jordan. The defendant was holding a gun, which he then tucked inside his pants. The defendant walked fast out the back exit of the building.

On cross-examination Jones admitted that he initially did not tell the authorities about having seen the defendant after the shooting. He explained that he had been frightened and did not want to become involved. He also admitted that at the preliminary hearing he had testified that he did not see the defendant holding a gun until the defendant was outside the building. At trial he had described the defendant both as a friend and an acquaintance but at the preliminary hearing he said the defendant was not a friend. It was stipulated that, if called, defense witness Violet Hall, who had known the defendant and Jones for eight or nine years, would testify that Jones' reputation for truth and veracity was not good.

Thomas Hughes also testified that two weeks before the shooting he witnessed a fight between the defendant and Jordan. George Delaney testified that on the afternoon of the day of the shooting defendant spoke to him about that fight, saying Jones should not have "whipped" him and that he was going to "get even." While in Hughes' apartment the defendant had warned Hughes that a young girl in the apartment should not jump on the couch where defendant had placed his coat because the gun might go off. Later that evening defendant and Jordan returned to Hughes' apartment. They argued

there but shook hands before leaving.

## I

■■ ■ We first consider defendant's claim that he was not proved guilty beyond a reasonable doubt. The evidence presented was circumstantial to the extent that there was no eyewitness to the actual shooting. However, three eyewitnesses testified that defendant was alone with the victim immediately before the shooting, and one of those witnesses, Gregory Jones, saw the defendant leaving the scene with a gun in his hand immediately after the shooting. The State also presented evidence that defendant was upset about having been beaten by the victim, had threatened to get even with him on the day of the shooting, and carried a loaded gun several hours before the shooting. A conviction may be based entirely on circumstantial evidence where the proof is conclusive and leads, on the whole, to a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.) We find that the evidence we have summarized, although partially circumstantial, was sufficient to establish defendant's guilt beyond a reasonable doubt.

■■ ■ The defendant notes the impeachment of Gregory Jones, including his initial omission of the fact of having seen the defendant with a gun after the shooting, his changing account of where he first saw the defendant with a gun, and his poor reputation for veracity. Defendant also notes that two of the State's witnesses, George Delaney and Thomas Hughes, had prior criminal convictions and Hughes also had two pending felony charges against him at the time of trial. These were all matters to be weighed by the trial judge in his determination of credibility. His determination will not be set aside on review unless the proof of guilt is so unsatisfactory as to create a reasonable doubt as to defendant's guilt (*People v. Pagan* (1972), 52 Ill. 2d 525, 288 N.E.2d 102), and we do not find that the impeachment at issue here created such doubt.

Defendant also suggests that the State failed to exclude the possibility that Adrian Driver or Gregory Jones actually shot the victim. The basis for the possible involvement of Driver is that one witness, Donna David, saw a man dressed like Driver run from the building in between the shots. The sole basis for Jones' possible involvement appears to be his presence near the scene of the shooting and the variances in his account of what he saw. We do not find that either of these hypotheses rise to the level of an unrebutted reasonable hypothesis of innocence which would require reversal of a conviction based

on circumstantial evidence. See *People v. Garrett* (1975), 62 Ill. 2d 151, 339 N.E.2d 753.

## II

■ We find no merit to defendant's contention that his stated intention to "get even" with the victim was inadmissible hearsay. Threats made by an accused against the person he is charged with killing are admissible to show motive and criminal intent. *People v. Williams* (1980), 85 Ill. App. 3d 850, 407 N.E.2d 608.

## III

■ We agree with defendant's contention that his armed violence conviction must be vacated, as it was based on the same acts on which his murder conviction was based. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.) It was stipulated that the cause of the victim's death was two bullet wounds to the brain. The information charging the defendant with armed violence expressly predicated that charge on defendant's commission of the felony of murder. There was only one murder victim and only one act of murder, shooting the victim twice in the head, and therefore only one conviction was permissible. (*People v. Szabo* (1983), 94 Ill. 2d 327, 447 N.E.2d 193; *People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795.) The State incorrectly relies on cases such as *People v. Mays* (1980), 81 Ill. App. 3d 1090, 401 N.E.2d 1159, where shooting a victim three times in the head was held to properly support three separate convictions for aggravated battery. While it is clearly possible for a person to be the victim of three separate aggravated batteries, we cannot agree with the State's apparent suggestion that a person may be the victim of two acts of murder, one of which would then be the basis for a separate armed violence conviction.

## IV

We also agree with the defendant that his conviction for the felony of unlawful use of weapons was improper. Defendant was charged by information with unlawful use of weapons in that he:

"*** knowingly carried on and about his person within the corporate limits of the city of Chicago, he not then and there being on his land or in his own abode or his fixed place of business, a loaded gun, in violation of Chapter 38, Section 24—1 (a10)/24—1(b) ***."

Section 24—1(b) provides in pertinent part:

"A person convicted of a violation of *** Subsection (a)(10) ***

commits a Class A misdemeanor; ***. *** A person convicted of a felony under the laws of this or any other jurisdiction, who, within 5 years of release from penitentiary or within 5 years of conviction if penitentiary sentence has not been imposed, violates any Subsection of this Section commits a Class 3 felony." Ill. Rev. Stat. 1981, ch. 38, par. 24—1(b).

No evidence of a prior conviction of the defendant was presented at trial. However at the sentencing hearing of January 26, 1982, the State noted that the presentence report indicated that defendant had been convicted of unlawful restraint on October 21, 1981.

■■ In a line of cases, our supreme court has held that proof of circumstances which render a misdemeanor a felony must come at trial before the finding of guilt or innocence. (*People v. Palmer* (1984), 104 Ill. 2d 340; *People ex rel. Carey v. Pincham* (1979), 76 Ill. 2d 478, 394 N.E.2d 1043; *People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496; *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499.) In this cause, the State did not in fact establish the enhancing element at trial. Thus we find that the State failed to establish in the proper manner that defendant's crime of unlawful use of weapons was a felony rather than a misdemeanor. We therefore reduce his conviction to a misdemeanor (*People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496), and reduce his sentence on that offense to 364 days, to be served concurrently with his murder sentence. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—4.1.

■■ Defendant has also contended that our vacation of either of his lesser offenses requires a remand for resentencing on his murder conviction because of the possibility that the trial court was influenced by the other improper convictions. However, in the absence of any affirmative indication in the record that the sentencing judge was so influenced, we find no basis for such a remand. *People v. Owens* (1982), 109 Ill. App. 3d 1150, 441 N.E. 2d 908.

Defendant's conviction and sentence for murder is affirmed, his conviction for armed violence is reversed, and his felony conviction for unlawful use of weapons is reduced to a misdemeanor conviction with his sentence for that crime reduced to 364 days, to be served concurrently with his murder sentence.

Affirmed in part; reversed in part.

LINN, P.J., and JIGANTI, J., concur.