THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLEMMIE L. CARTER, Defendant-Appellant.

Second District   No. 2—02—0272

Opinion filed December 18, 2003.

McLAREN, J., dissenting.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Constance Augsburger, of Buzard & Augsburger, of Mt. Morris, for the People.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

Following a bench trial, the defendant, Clemmie Carter, was found guilty of four counts of unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1 (West 1996)) and one count of possession of a firearm without a valid firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 1996)). The trial court sentenced the defendant to five years' imprisonment for each offense, the sentences to run concurrently. On appeal, the defendant argues that four of his convictions should be vacated due to the one-act, one-crime doctrine. The defendant additionally argues that the trial court relied on improper factors in determining his sentence. We affirm in part and vacate in part and remand for additional proceedings.

On October 8, 1997, the defendant was charged by indictment with unlawful possession of a weapon by a felon and possession of a firearm without a FOID card. Count I of the indictment charged the defendant with unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1 (West 1996)); count II charged the defendant with possession of a firearm without a FOID card (430 ILCS 65/2(a)(1) (West 1996)). Both counts I and II were based on the defendant's alleged possession of a .22-caliber handgun on September 22, 1997. On Febru-

ary 4, 1998, the defendant was charged with three more counts of unlawful possession of a weapon by a felon. Counts IV through VI were based on the defendant's alleged possession of a .25-caliber handgun, ammunition for the .25-caliber handgun, and ammunition for the .22-caliber handgun, respectively, on September 22, 1997.

On April 7, 1998, the trial court conducted a bench trial. Officer John Moran of the Waukegan police department testified that on September 22, 1997, at approximately 2:34 a.m., he was on duty, sitting in his parked squad car on George Street, near the intersection with South Utica Street. Officer Moran was watching a van parked on South Utica that he knew belonged to the Moses brothers. Three people were standing outside the van. There was other pedestrian traffic in the area as well. Officer Moran observed a white 1982 Chevrolet Caprice drive north on South Utica and stop 15 to 20 feet from the van. A passenger in the Caprice leaned out of the window and fired 10 to 15 shots from an automatic weapon toward the van. The Caprice continued north on South Utica at a high rate of speed. The Caprice eventually turned right on Ravine Street.

Officer Moran drove his squad car down George with the lights off to get a better look at what had taken place and to see if anybody had been hurt. He had just crossed South Utica when he saw the Caprice turn onto George from Oak Street. The Caprice headed toward Officer Moran's squad car. Officer Moran activated his mars lights and shined his spotlight on the Caprice. The Caprice almost struck Officer Moran's squad car and then turned back onto South Utica, heading north. Officer Moran got a very good look at both the driver and the passenger. He identified the defendant as the driver. Officer Moran followed the Caprice and eventually saw it crash into a building at the intersection of 12th Street and Sheridan Road. By the time he reached the vehicle, the occupants had abandoned it.

Officers Keith Zupec and Dave Mercado of the Waukegan police department also testified. Officer Zupec testified that he was dispatched to the crash site to assist in locating the individuals who had abandoned the Caprice. Officer Zupec saw the defendant running out of an alley just west of Sheridan and near 13th Street. Officer Zupec gave chase and eventually apprehended the defendant. Officer Mercado testified that he responded to the crash site to collect evidence. Officer Mercado found two handguns on the passenger side floorboard of the Caprice, a .22-caliber semiautomatic handgun and a .25-caliber semiautomatic handgun. Officer Mercado also found a clip containing 26 .22-caliber bullets on the floorboard. The .22-caliber handgun had an empty shell casing in its chamber and was otherwise unloaded. The .25-caliber handgun was loaded with a clip containing five bullets.

After the close of all the evidence, the trial court found the defendant guilty on all five charges. The trial court set a May 8, 1998, sentencing date. The defendant failed to appear on May 8, 1998, and the trial court issued an arrest warrant. The defendant was eventually arrested on the warrant on October 5, 2001.

The trial court held a sentencing hearing on December 3, 2001. Neither party presented any evidence. The presentence investigation report (PSI) revealed that the defendant had an extensive criminal history. The defendant's record included convictions of driving under the influence, aggravated battery, obstructing a peace officer, unlawful possession of a controlled substance with the intent to deliver, and disorderly conduct.

The PSI also revealed several new arrests. On February 27, 2001, the defendant was arrested in Cleveland, Ohio, for possession of drugs, preparing drugs for sale, and possession of criminal tools. Ohio authorities had issued a warrant for the defendant's arrest due to the defendant's failure to appear in court on these charges. Additionally, on October 4, 2001, the defendant was arrested by the Waukegan police for possession of cannabis and obstruction of justice.

After considering the PSI and hearing arguments from the State and the defendant, the trial court sentenced the defendant to five years' imprisonment on each count. The trial court ordered the sentences to run concurrently. In making its determination, the trial court stated:

"As to [the defendant's] subsequent conduct, especially after he didn't show up for his sentencing hearing, and the fact, even though belatedly, he picked up more offenses, one of them being a felony in Ohio, and the State of Ohio waiting to extradite the defendant, it appears that the defendant is not someone to be trusted with a gun. *** It appears that he was involved in a violent, potentially explosive, dangerous situation where people would have gotten hurt, even though to the defendant it might be something that he doesn't consider to be too serious. *** The public out there are terrorized by gang violence of this sort. The public out there want people that are involved in gang violence locked up and not come out [sic]. And you haven't helped yourself at all. You didn't turn yourself in. You didn't come clean. You kept violating the law."

Following the denial of his posttrial motions, the defendant filed a timely notice of appeal.

The defendant's first argument on appeal is that his multiple convictions violate the one-act, one-crime doctrine. The defendant argues that his conviction of possession of a firearm without a FOID card and his convictions of unlawful possession of a weapon by a felon

were all based on the same conduct. The defendant argues that four of his convictions should be vacated: three convictions of unlawful possession of a weapon by a felon and one conviction of possession of a firearm without a FOID card. The State confesses error as to the defendant's conviction of possession of a firearm without a FOID card.

■ Before turning to the merits, we note that the defendant has failed to properly preserve this issue for appeal. However, we address the argument under the plain error doctrine because the defendant's convictions and sentences affect his substantial rights. See *People v. Smith*, 183 Ill. 2d 425, 430 (1998).

■ Turning then to the merits of the defendant's argument, the one-act, one-crime doctrine, articulated in *People v. King*, 66 Ill. 2d 551, 566 (1977), provides that multiple convictions are not proper where (1) only one physical act was manifested, or (2) multiple acts were manifested, but some of the convictions are of included offenses. In *King*, the supreme court held:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts." *King*, 66 Ill. 2d at 556.

■ The one-act, one-crime rule articulated in *King* requires a two-part analysis. A court must first determine whether a defendant's conduct consisted of separate acts or a single physical act. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). An "act" is " 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 186, quoting *King*, 66 Ill. 2d at 566. If only one physical act was undertaken, multiple convictions are improper. If separate acts were undertaken, a court must then ask whether any of the offenses are included offenses. If so, multiple convictions are improper. *Rodriguez*, 169 Ill. 2d at 186.

■ When only one conviction can stand under the one-act, one-crime doctrine, the rule is that the conviction of the more serious offense should stand. *People v. Bussan*, 306 Ill. App. 3d 836, 839 (1999). Whether multiple convictions must be vacated under the one-act, one-crime doctrine is a question of law subject to *de novo* review. *People v. Daniels*, 187 Ill. 2d 301, 307 (1999).

■ Applying these principles to the present case, we do not believe that the defendant's multiple convictions of unlawful possession of a weapon by a felon violate the one-act, one-crime doctrine. As to the

first part of the analysis, it is clear that the defendant's conduct consisted of four separate acts. Unlawful possession of a weapon by a felon, as defined by section 24—1.1 of the Criminal Code of 1961 (the Criminal Code), may be predicated on the possession of *"any* weapon \*\*\* or *any* firearm or *any* firearm ammunition." (Emphasis added.) 720 ILCS 5/24—1.1(a) (West 1996). The defendant was charged with four counts of this offense. One charge was based on the defendant possessing a .22-caliber firearm and another charge was based on the defendant possessing a .25-caliber firearm. The remaining two charges were based on the defendant possessing .22-caliber ammunition and .25-caliber ammunition. Though simultaneous, the defendant's acts of possession were all distinct. For example, the defendant's possession of the .22-caliber handgun was a different act from his possession of the .25-caliber handgun. Likewise, the defendant's possession of the .22-caliber ammunition was a different act from his possession of the .22-caliber handgun. Indeed, two separate acts do not become one solely by virtue of being proximate in time. *People v. Myers*, 85 Ill. 2d 281, 288-89 (1981); *People v. White*, 311 Ill. App. 3d 374, 385 (2000).

We do not find problematic the fact that the .25-caliber ammunition was loaded into the .25-caliber firearm. Although the ammunition was inside the gun, by possessing each, the defendant committed separate and overt acts. The defendant could have chosen to possess the gun without the ammunition and the ammunition without the gun. Indeed, the fact that the defendant chose to possess the ammunition within the firearm exposed the public to far more danger than if he had chosen to possess the firearm unloaded or without ammunition altogether.

As to the second part of the analysis, the defendant's acts of unlawful possession of a weapon by a felon are certainly not lesser included offenses of each other. Therefore, as to the defendant's multiple convictions of unlawful possession of a weapon by a felon, there exists no violation of the one-act, one-crime doctrine.

The dissent asserts that our determination that a felon who possesses a loaded gun commits two separate offenses may lead to absurd results. Particularly, the dissent suggests a hypothetical situation wherein a felon possesses 500 rounds of the same type of ammunition. The dissent fears that under our analysis, that felon could be charged and convicted 500 times. In no way does our determination or analysis suggest this. The defendant here possessed several .22-caliber bullets and several .25-caliber bullets. However, the defendant was not charged and convicted according to the number of bullets he possessed. Rather, the defendant was charged and convicted once of possessing .22-caliber bullets and once of possessing .25-caliber bullets

based on the fact that he possessed two different types of ammunition in two distinct places.

We, on the other hand, are concerned by the dissent's seemingly inconsistent position in this case that the unloaded .22-caliber gun and the .22-caliber ammunition found right beside it can support two offenses while the loaded .25-caliber gun and ammunition cannot. Had we reached the same conclusion as the dissent, we would be sending felons everywhere a message to load their guns when the police approach so as to avoid multiple charges and stricter penalties. The dissent's message to felons to load their guns would subject our police officers and the people of this state to greater risks.

We believe that our ruling in the present case mirrors a recent ruling made by the Illinois Appellate Court, First District, in *People v. McCarter*, 339 Ill. App. 3d 876 (2003). In *McCarter*, police recovered an A-K assault rifle from a corner in a bedroom in the defendant's parents' house. *McCarter*, 339 Ill. App. 3d at 878. On top of a dresser in that same room, police found a 9-millimeter handgun loaded with 15 rounds. *McCarter*, 339 Ill. App. 3d at 878. Inside a dresser drawer, police found numerous rounds of ammunition. *McCarter*, 339 Ill. App. 3d at 878. Finally, in a closet, police found an extended magazine for a .45-caliber handgun. *McCarter*, 339 Ill. App. 3d at 878. The defendant was charged with and convicted of three counts of unlawful use of a weapon by a felon, based on his simultaneous possession of the assault rifle, the 9-millimeter handgun, and the ammunition. *McCarter*, 339 Ill. App. 3d at 878.

On appeal, the *McCarter* court upheld the defendant's multiple convictions, finding that each act of possession was separate and distinct. *McCarter*, 339 Ill. App. 3d at 881-82. The *McCarter* court's reasoning was similar to our reasoning above. In particular, the *McCarter* court explained that section 24—1.1 proscribes a felon's possession of " '*any* firearm, in *any* situation.' " (Emphasis in original.) *McCarter*, 339 Ill. App. 3d at 881, quoting *People v. Gonzalez*, 151 Ill. 2d 79, 87 (1992). The *McCarter* court further explained:

> "[S]ection 24—1.1 was enacted 'to protect the health and safety of the public by deterring possessions of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a *weapon*' (emphasis added)[ ]. The danger to the public is obviously greater from several weapons rather than only one weapon." *McCarter*, 339 Ill. App. 3d at 881-82, quoting *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986).

The dissent suggests that *McCarter* supports its position that possession of a loaded gun is one offense. The dissent claims that none of

the ammunition charges in *McCarter* were predicated on the ammunition that was loaded into the 9-millimeter handgun. The dissent maintains that the three charges in *McCarter* were based upon the assault rifle, the handgun, and the ammunition that was found in the dresser drawer. However, the *McCarter* opinion does not indicate that the third charge, the ammunition charge, was based upon the ammunition found in the dresser drawer. Contrary to the dissent's assertion, the ammunition charge may very well have been predicated on the ammunition that was loaded into the gun.

The dissent further suggests that *McCarter* is more similar to *People v. Deppert*, 83 Ill. App. 3d 375 (1980), than it is to the present case. In *Deppert*, a defendant was found with a .45-caliber loaded handgun, a .22-caliber loaded handgun, and 25 rounds of .22-caliber bullets but was charged with and convicted of only the possession of the .45-caliber handgun and the .22-caliber handgun. *Deppert*, 83 Ill. App. 3d at 376-79. *Deppert* is not similar to *McCarter*, nor is it relevant to the present case. The defendant in *Deppert* was charged with unlawful use of a weapon. *Deppert*, 83 Ill. App. 3d at 376. Both the *McCarter* case and the case herein involve a different offense, unlawful possession of a weapon by a felon. Indeed, we note that section 24—1.1 of the Criminal Code, which defines the offense of possession of a weapon by a felon, was not even in existence until 1983, three years after the *Deppert* opinion was published. Moreover, the issue in *Deppert* did not involve the one-act, one-crime doctrine. Rather, the issue in that case was whether the search of the defendant's vehicle was reasonable. *Deppert*, 83 Ill. App. 3d at 380.

The dissent also cites to, along with *Deppert*, a laundry list of other cases that supposedly detail situations wherein a defendant was found with a loaded gun but charged with only one offense. These cases are also dissimilar to *McCarter* and the instant case. The majority of them, like *Deppert*, involve the offense of unlawful use of a weapon which, again, is a different offense from the one at issue here. See, *e.g.*, *People v. Weir*, 111 Ill. 2d 334 (1986); *People v. Hurt*, 175 Ill. App. 3d 970 (1988); *People v. Cook*, 129 Ill. App. 3d 531 (1984); *People v. Stewart*, 122 Ill. App. 3d 546 (1984); *People v. Glass*, 49 Ill. App. 3d 617 (1977); *People v. Marbley*, 34 Ill. App. 3d 434 (1975); *People v. Adams*, 30 Ill. App. 3d 396 (1975); *People v. Rodgers*, 2 Ill. App. 3d 507 (1971). Three of the cases relied upon by the dissent do not even involve a weapons offense. See, *e.g.*, *People v. Colley*, 173 Ill. App. 3d 798 (1988) (the defendant was charged with and convicted of residential burglary); *People v. Sockwell*, 55 Ill. App. 3d 174 (1977) (the defendant was charged with and convicted of burglary and forgery); *People v. Hellemeyer*, 28 Ill. App. 3d 491 (1975) (the defendant

was charged with and convicted of burglary and possession of burglary tools). Additionally, none of these cases involve the one-act, one-crime doctrine.

Finally, the dissent overlooks the well-recognized legal principle that the decisions of whether to initiate a criminal prosecution and which of several charges shall be brought are the sole province of the State's Attorney. *People v. Pankey*, 94 Ill. 2d 12, 16 (1983). Indeed, the fact that a defendant may have committed three offenses does not mandate that the defendant be prosecuted for all three offenses.

We believe that our ruling is consistent with that of the supreme court in *People v. Crespo*, 203 Ill. 2d 335 (2001). In *Crespo*, the defendant was charged with and convicted of aggravated battery and armed violence, based on the stabbing of one of his victims. *Crespo*, 203 Ill. 2d at 339. He had stabbed the victim three times. *Crespo*, 203 Ill. 2d at 338. On appeal, the supreme court overturned defendant's multiple convictions, albeit acknowledging that according to precedent, each separate stab "could have" supported a separate offense. (Emphasis omitted.) *Crespo*, 203 Ill. 2d at 344. However, the supreme court noted that the charging instrument had not differentiated among the three stabs. *Crespo*, 203 Ill. 2d at 345. The supreme court found that to apportion the acts for the first time on appeal would be profoundly unfair. *Crespo*, 203 Ill. 2d at 345. It therefore held that, to sustain multiple convictions, an indictment must indicate that the State intends to treat the conduct of the defendant as multiple acts. *Crespo*, 203 Ill. 2d at 345.

Here, the defendant's multiple convictions are in line with *Crespo*. The indictment clearly apportioned each act of possession. Count I clearly charged the defendant with unlawful possession of a weapon by a felon, based on the defendant's alleged possession of a .22-caliber handgun. Count IV charged the defendant based on his possession of a .25-caliber handgun. Count V charged the defendant based on his possession of .25-caliber ammunition. Lastly, count VI charged the defendant based on his possession of .22-caliber ammunition.

Finally, we are not persuaded by the defendant's reliance on *People v. Manning*, 71 Ill. 2d 132 (1978). In *Manning*, the supreme court held that the simultaneous possession of more than one controlled substance could result in only one conviction to avoid offending the one-act, one-crime doctrine. *Manning*, 71 Ill. 2d at 137. In making its decision, the supreme court relied heavily on the language of section 402 of the Illinois Controlled Substances Act (the Act), which at that time provided that "[e]xcept as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled substance." Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a); *Manning*, 71 Ill. 2d at 134.

The supreme court found that this language was devoid of legislative intent and, therefore, resolved the ambiguity in favor of leniency. *Manning*, 71 Ill. 2d at 137. Notably, *Manning* has since been legislatively overruled. The current version of the Act explicitly authorizes multiple convictions for the unauthorized possession of multiple types of controlled substances. 720 ILCS 570/402 (West 2002).

*Manning* is inapplicable to the present case. First, section 24—1.1 is not devoid of legislative intent. As explained above, section 24—1.1 unambiguously prohibits a felon from possessing any weapon, any firearm, or any firearm ammunition. Second, weapons, firearms, and ammunition are inherently different from controlled substances. As noted by the *McCarter* court, "controlled substances *** are statutorily prohibited in terms of volume, *i.e.*, grams not number of packets, and *** it would have dire implications to impose the same liability on a defendant found in possession of one switchblade knife as on a defendant found in possession of an entire arsenal." *McCarter*, 339 Ill. App. 3d at 880.

However, as the State concedes, the defendant's conviction of possession of a firearm without a FOID card, in conjunction with his conviction of unlawful possession of a firearm under count I of the indictment, does stand in contravention of the one-act, one-crime doctrine. The defendant's offense of unlawful possession of a weapon by a felon was based on the same conduct as his offense of possession of a firearm without a FOID card. Particularly, both offenses were based on the defendant possessing a .22-caliber handgun. Accordingly, being the lesser offense, we vacate the defendant's conviction of possession of a firearm without a FOID card.

■ The defendant's next argument is that the trial court relied on several improper factors in determining his sentence. Specifically, the defendant argues that the trial court erred in considering his February 27, 2001, arrest in Cleveland, Ohio, and his October 4, 2001, arrest in Waukegan. The defendant additionally argues that the trial court improperly concluded and considered that the September 22, 1997, shooting incident he was involved in was gang-related.

A trial court ordinarily sits in the best position to make a reasoned decision as to the appropriate punishment in each case, and therefore, a trial court's sentencing determination is entitled to great deference. *People v. Hicks*, 101 Ill. 2d 366, 375 (1984). A reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed mitigating and aggravating factors differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). As long as the trial court does not consider incompetent evidence or improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in

sentencing a defendant to any term within the statutory range prescribed for the offense. *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Even reliance on an improper factor in aggravation does not necessarily require remand where such weight is so insignificant that it did not lead to a greater sentence. *People v. Pierce*, 223 Ill. App. 3d 423, 441 (1991).

In the instant case, it was clearly improper for the trial court to consider the defendant's recent arrests in Ohio and Waukegan. See *People v. Wallace*, 145 Ill. App. 3d 247, 255 (1986) (a defendant's pending charges should not be relied upon by a sentencing court). It was also improper for the trial court to conclude and consider that the September 22, 1997, incident was gang-related, as there was no evidence in the record that the shooting was in fact gang-related. See *People v. Fetter*, 227 Ill. App. 3d 1003, 1009 (1992) (a sentence should be based upon the record and should not be grounded on speculation or conjecture).

Nevertheless, a reviewing court should not focus on a few words or statements of the trial court but should make its decision based on the record as a whole. See *Fetter*, 227 Ill. App. 3d at 1010. With that in mind, the record reveals that the trial court did not place much significance on the defendant's recent arrests. Accordingly, the trial court's consideration of the arrests was not in itself reversible error. However, the record reveals that the trial court did place considerable weight on its unfounded conclusion that the defendant's crimes arose from gang-related activity. During a hearing on the defendant's motion to reconsider sentence, the trial court addressed the defendant's concerns about its consideration of his pending Ohio and Waukegan arrests:

> "I have considered the defendant's motion to reconsider the sentence, and I find little merit to it in view of the fact that I did weigh all the factors in aggravation; all the mitigation. The factors [*sic*] the defendant refers to is one of the factors that were included, but much more emphasis was placed and what was significant in my sentencing were the acts that the defendant perpetrated that night, the gang war that he was engaged in; the paramount concern that I had in protecting the public and deterring others from committing this type of activity."

Given the record, we cannot find insignificant the trial court's improper conclusion and consideration that the defendant's actions were gang-related. Accordingly, even though the defendant's extensive criminal record certainly supports sentences of five years' imprisonment, because the trial court apparently placed great weight on an improper sentencing factor, we must vacate the defendant's sentences and remand for a new sentencing hearing.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part and vacated in part, and the cause is remanded for a new sentencing hearing.

Affirmed in part and vacated in part; cause remanded.

O'MALLEY, J., concurs.

JUSTICE McLAREN, dissenting:

I respectfully dissent in part. Defendant's two convictions of unlawful possession of a weapon by a felon for both possessing a .25-caliber gun, and then, also for the ammunition that was contained in the gun, violate the one-act, one-crime doctrine. As *People v. King*, 66 Ill. 2d 551 (1977), instructs us, multiple convictions are improper where more than one offense is carved from the same physical act. *King*, 66 Ill. 2d at 556. For this purpose, "act" is defined as "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. I cannot fathom how possessing a loaded gun constitutes two separate overt or outward manifestations. The act of possessing the weapon is the same act in this case as possessing the ammunition because the ammunition was contained inside the weapon. Therefore, the act of possessing the weapon could not be separated from the act of possessing the ammunition. They are one and the same act.

There is an adage, "You have to break a few eggs to make an omelette." Its meaning relates to the realization that change may entail prefatory acts. The adage is illustrative of the fact that when one possesses an egg one simultaneously possesses the shell, yolk, and white. One overt act of possession results in the simultaneous indivisible possession of the three constituent elements of the egg. In order to separate the shell from the yolk and white, the shell must be broken and the yolk and white removed. Without the overt act of breaking a few eggs, the yolks and whites cannot be removed to make an omelette. Likewise, without the overt act of unloading the gun, the magazine and the cartridges cannot be removed from the gun. Until the magazine and the cartridges are removed from the gun, the act of possession is simultaneous and indivisible.

The majority cites *People v. Crespo*, 203 Ill. 2d 335 (2001), for the proposition that separate acts were committed. The fallacy in the analysis is that there were in fact three different stab wounds involved in the *Crespo* case. *Crespo*, 203 Ill. 2d at 338. Applying the facts in this case to *Crespo* would result in the following analysis. If there were one stab to the arm of the victim made by Crespo, and the indictments

had described three separate acts as a stab wound that broke the skin of the victim, a stab wound that cut the bicep muscle, and a stab wound that cut the tricep muscle, then *Crespo* would control. However, in *Crespo* there were three distinct stab wounds, not one stab wound described in three different ways. By misapplying *Crespo*, the majority has paved the way for multiple convictions based upon describing a single act in smaller discrete portions of the same act. Thus, the defendant in this case could have been successfully prosecuted for each cartridge possessed so long as the State described the "separate acts" as the possession of one cartridge. This would lead to the absurd result wherein a defendant possessing a "brick" of 500 rounds of .22-caliber long rifle ammunition (a box, approximately 3 inches x 3 inches x 6 inches, containing 10 boxes with 50 rounds in each box) could be convicted of 500 counts of possessing a single cartridge and fined $500,000.

The majority dismisses the possibility of such an absurd result by stating that defendant here "possessed two different types of ammunition in two distinct places." 344 Ill. App. 3d at 669. This statement ignores the fact that, in this case, the gun and the ammunition found in the gun were located in exactly the same place at exactly the same time. Still, the majority concludes that they each support separate convictions. Thus, the majority's distinction does not prevent the absurd result that follows from its faulty reasoning.

The majority also states: "The defendant could have chosen to possess the gun without the ammunition and the ammunition without the gun." 344 Ill. App. 3d at 668. I submit that hypothetical facts that involve separate acts do not alter the reality that, in this case, the possession of the gun and the ammunition were one and the same act. The majority continues: "Indeed, the fact that the defendant chose to possess the ammunition within the firearm exposed the public to far more danger than if he had chosen to possess the firearm unloaded or without ammunition altogether." 344 Ill. App. 3d at 668. I submit that the majority does not cite to authority as to how or why public policy was not considered in our supreme court's decision in *People v. King*. We are not to decide cases contrary to the law based upon our perception of public policy when it is inconsistent with established law and the reality of what actually transpired. The majority also claims that my interpretation will encourage the carrying of loaded guns by felons. 344 Ill. App. 3d at 669. I submit two reasons why this claim is unfounded. First, with concurrent sentences, there is no effective difference in punishment. This defendant had two guns and ammunition for both. However, he is going to prison to effectively serve one term of imprisonment, although convicted of five counts. Second, if this

felon was concerned about multiple convictions, I submit that he would have carried only one firearm and ammunition for that firearm.

The majority asserts that the legislature intended to create two separate offenses for possession of a loaded weapon. The majority argues that the legislature's intent is expressed by the language in section 24—1.1 of the Criminal Code, which prohibits the possession of "any weapon *** or any firearm or any firearm ammunition." 720 ILCS 5/24—1.1 (West 1996). However, I believe this language is ambiguous regarding intent to create separate offenses for possession of a loaded weapon. In any event, the majority fails to realize that the acts it claims are separate are actually one act.

The current version of the Illinois Controlled Substances Act explicitly authorizes multiple convictions for the unauthorized simultaneous possession of different types of controlled substances. See 720 ILCS 570/402 (West 2002). Section 24—1.1, involved here, does not contain the explicit language found in the Controlled Substances Act. Because the legislature has not made it explicitly clear that it intended to permit multiple offenses for the possession of a loaded weapon, we must resolve the ambiguity in favor of leniency. See *People v. Manning*, 71 Ill. 2d 132, 137 (1978) (subsequently overturned by 720 ILCS 570/402 (West 2002)); see also *People v. Davis*, 199 Ill. 2d 130, 135 (2002) (criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute).

Using the majority's reasoning, defendant could have been charged with and convicted of five separate offenses of unlawful possession for each of the five bullets contained in the clip that was contained in the weapon. Interestingly, the State did not charge defendant in that manner, nor was the defendant charged in that manner in *People v. McCarter*, 339 Ill. App. 3d 876, 878 (2003), cited by the majority as "mirroring" this case. I recognize that the Appellate Court, First District, held in *McCarter* that multiple convictions can stand for simultaneous possession of a rifle, handgun, and ammunition. But, I believe *McCarter* supports my position rather then the majority's. A careful reading of *McCarter* reveals that police found a loaded A-K 47 assault rifle in the corner of the defendant's bedroom, a 9-millimeter handgun loaded with 15 rounds on top of a dresser in that same room, and numerous rounds of ammunition in a dresser drawer. *McCarter*, 339 Ill. App. 3d at 878. Yet, the defendant was charged with and convicted of only three counts of unlawful use of a weapon. If the prosecutor had followed the majority's reasoning, the defendant in *McCarter* would have been charged with at least five counts of unlawful

use of a weapon: one count each for the assault rifle, the ammunition contained in the rifle, the 9-millimeter handgun, the ammunition contained in the handgun, and the ammunition found in the dresser drawer. However, the ammunition that supported the only count relating to ammunition was not contained in a weapon; rather, it was found in a dresser drawer. The defendant in *McCarter* was not charged separately for the ammunition contained in the rifle and handgun. Therefore, at worst, *McCarter* is silent regarding the issue presented here, and, at best, it supports my position. At a minimum, this case does not mirror *McCarter* as the majority claims.

It would appear that *McCarter* mirrors *People v. Deppert*, 83 Ill. App. 3d 375, 379 (1980). In *Deppert*, the defendant was convicted of two counts of unlawful use of a weapon. He was in possession of a .45-caliber semiautomatic pistol loaded with one round of ammunition; a fully loaded .22-caliber semiautomatic pistol, and at least 25 rounds of .22-caliber long rifle cartridges. Under the majority's logic, there was a possibility of five counts of unlawful use of a weapon (the .45-caliber pistol, the ammunition inside the pistol, the .22-caliber pistol, the ammunition inside the pistol, and the ammunition outside the pistols). Despite this possibility, there were only two convictions.

Finally, although I am aware that absence of evidence is not necessarily evidence of absence, I would like to point out that neither the State nor the majority nor I have found a case wherein a loaded gun supported two convictions of unlawful use of a weapon based upon the possession of the firearm and the ammunition contained therein. I would submit that one would expect to find a case on point. (Contrary to what the majority claims, *McCarter* is not such a case.) The following are cases wherein possession of a loaded gun was charged as only a single offense of unlawful use of a weapon despite the fact that the gun contained ammunition: *People v. McCarter*, 339 Ill. App. 3d 876 (2003); *People v. Hurt*, 175 Ill. App. 3d 970, 972 (1988); *People v. Colley*, 173 Ill. App. 3d 798, 811 (1988); *People v. Weir*, 111 Ill. 2d 334, 336 (1986); *People v. Cook*, 129 Ill. App. 3d 531, 535 (1984); *People v. Stewart*, 122 Ill. App. 3d 546, 548 (1984); *People v. Deppert*, 83 Ill. App. 3d 375, 379 (1980); *People v. Sockwell*, 55 Ill. App. 3d 174, 176 (1977); *People v. Glass*, 49 Ill. App. 3d 617, 619 (1977); *People v. Marbley*, 34 Ill. App. 3d 434, 437 (1975); *People v. Adams*, 30 Ill. App. 3d 396 (1975) (abstract of op.); *People v. Hellemeyer*, 28 Ill. App. 3d 491, 499 (1975); *People v. Rodgers*, 2 Ill. App. 3d 507, 511 (1971).

The majority attempts to distinguish these cases on sundry grounds. The distinctions drawn by the majority fail to address the similarity between a loaded firearm in the possession of a felon and a loaded firearm in the possession of a misdemeanant. Applying the

analysis of the majority to the adage, "You have to break a few eggs to make an omelette," the majority would claim that the adage applies only to chicken eggs. The majority would disavow the adage when it comes to duck, goose, or ostrich eggs.

I believe the majority's definition defies reality and conflicts with the doctrine of one act, one crime contained in *People v. King*. Thus, I do not believe this defendant should be convicted twice for the same act, and I must respectfully dissent.